# The Illinois Central Railroad Company

### *v.*

# Thomas Godfrey.

1. RIGHT OF WAY—*is the exclusive property of the railroad company.* The right of way of a railroad company is its exclusive property, upon which no unauthorized person has a right to be, for any purpose, and any person who travels upon the right of way of a railroad company, for his own convenience, as a foot-way, and not for any purpose of business connected with the railroad, is a wrong-doer and trespasser.

2. The mere acquiescence of a railroad company in the use of its track or right of way by persons passing along it, as a foot-way, does not give such persons a right of way over the track, nor is the company bound to protect or provide safe-guards for persons so using its grounds.

3. NEGLIGENCE—*the degree of care to be used by a party complaining of negligence of another.* Where both parties are equally in the position of right, which they hold independent of the favor of each other, the one complaining of an injury is only bound to show that it was produced by the negligence of the defendant, and that the complaining party exercised ordinary care or diligence to avoid it. But where the party injured is himself in the wrong, or not in the exercise of a legal right, or was at the time enjoying a privilege or favor granted without compensation or benefit to the party granting it, and of whose carelessness complaint is made, the party complaining must use extraordinary care before he can properly complain of the negligence of the other.

4. As a general rule, it is culpable negligence for a party to cross a railroad track, at a highway crossing, without looking in every direction that the rails run, to ascertain whether a train is approaching, and this requirement applies with increased force to one who was not lawfully

Statement of the case.

using the railroad track, but passing laterally along it, not at a highway crossing.

5. SAME—*when railroad company only liable for—when wanton and wilful injury.* When a plaintiff is unlawfully upon the track of a railroad company, and is injured by a passing train, the company can only be held liable for wanton or wilful injury, or such gross negligence as evinces wilfulness.

6. PLEADING AND EVIDENCE. In a suit against a railroad company for injuries occasioned to the plaintiff by being struck by a passing train, where the declaration contained no averment that there was a city ordinance regulating the rate of speed of trains at the place of the accident, it was improper to admit evidence as to the rate of speed being greater than that prescribed by the ordinance.

| | |
|---|---|
| 71 | 500 |
| 199 | 5387 |
| 71 | 500 |
| 202 | 5560 |
| 202 | 5629 |
| 71 | 500 |
| 205 | 6290 |
| 71 | 500 |
| 211 | 6537 |
| 111a | 5423 |
| 71 | 500 |
| 114a | 5233 |
| 71 | 500 |
| e215 | 1615 |

APPEAL from the Circuit Court of Macon county; the Hon. ARTHUR J. GALLAGHER, Judge, presiding.

This was an action on the case, brought by appellee against appellant, to recover for injuries received from being run against by a switch engine in appellant's yard, at Decatur, a short distance north of the crossing of the Toledo, Wabash and Western railway.

The evidence shows that the defendant's road at the locality of the crossing, consists of three tracks, running in almost a right line for a distance of some 500 feet south from, and over 200 feet north from the crossing of the Toledo, Wabash and Western railway, the west and middle tracks being $7\frac{2}{10}$ feet apart; the passenger depot and platform being in the south-east angle of the roads; the freight house and platform in the north-west angle. The injury occurred a little north of the centre of the freight house, about 76 feet north from said railway crossing, and on the west rail of the middle track. The plaintiff was on his return home from hunting for his cow, and got upon defendant's road at the crossing of the T., W. and W. railway, and walked north between the west and middle tracks to the point where the accident occurred. The switch engine moved north on the middle track, from a point south of Eldorado street, about 500 feet south from the railway crossing, and overtook plaintiff at the point where the

accident occurred, struck the plaintiff and caused the injury. He was knocked down, both his feet were run over by the wheels of the locomotive and so injured that they had afterwards to be amputated.

Persons had been in the habit of passing and re-passing, on foot, between the middle and west tracks on defendant's road, from the crossing north, past the point of accident, for a number of years, without objection by the company.

Plaintiff was well acquainted with the locality. He had been in the habit of crossing there for many years. As plaintiff states it, he "passed over the T.. W. and W. railway, going home; looked behind me and didn't see any engine; got on the Central track on the north side of the T., W. and W. railway, where the roads cross; had passed there a good many times for the last seven years; I was walking along there between the two west tracks; had got about 30 steps north of the T., W. and W. railway; just as I was going north, one of the hands from the freight house said, look out; I heard him, and before I could look round I was struck; was knocked down; it was about half past 3 o'clock P. M.; didn't see any engine when I got on the road; didn't hear a whistle or bell sounded; I didn't know which track it was on when I heard the man speak."

This comprises all the evidence as to the plaintiff's care and caution. Immediately before the accident, plaintiff was going north on the left hand side of the engine. The witness, Stafford, was riding on the engine with Adams, the engineer, and was in the cab, on the left hand side. He testifies that he saw Godfrey, the plaintiff, when the latter was 10 feet ahead of the engine, and the length of a walking-cane from the left hand rail of the middle track. "I didn't have no idea he was going to get in the way of the engine. He just looked like he staggered up against the engine; the beam on the front of the engine hit him; it sticks out over the rail about 8 inches "—(another witness testified 18 inches).

Adams, the engineer, testifies that he was at his place on the right hand side of the cab, looking out of the window, with his head out, watching for the train on the other road, there being an engine and train on the T., W. and W. railway, just east of the crossing, headed west, the head standing within 3 or 4 feet of the main track of defendant's road; that he did not see plaintiff until after he was hurt; that the engineer, from the engineer's station in the cab, could not see a man walking in front of the cab, 2 to 4 feet to the left of the engine, unless the man was 25 or 30 feet ahead of the engine.

Edmunson, the yard-master, was sitting on the cross-beam in front and at the right hand side of the engine. He testifies that he was looking at the engine on the T., W. and W. railway, and did not see plaintiff. The switch engine was worked by the engineer alone—no fireman was allowed; the engine made twenty-five or thirty trips a day about the yard; fifteen or twenty trains a day crossed the crossing between sunrise and dark. The engine did not stop before crossing the T., W. and W. railway, nor after it started to move up the middle track from the switch. The evidence as to the speed of the engine, and whether more than at the rate of six miles per hour, was conflicting, as also whether the bell was rung. The evidence seemed to show quite clearly that there was a flag-man on duty at the railroad crossing, and that he signalled the switch engine to cross.

Plaintiff introduced in evidence, against defendant's objection, what purported to be a city ordinance of Decatur, prohibiting, under a certain penalty, the running of any railroad engine or train of cars at a greater rate of speed than six miles per hour, within the corporate limits of Decatur, where the accident occurred.

The foregoing presents a substantial statement of the material facts and circumstances bearing upon the questions here considered.

Upon the trial the following instruction, among others, was given for the plaintiff:

"2.   If the jury believe, from the evidence, that, on or about the 4th day of November, A. D. 1871, the plaintiff was walking upon the right of way of the defendant, north of the intersection of the railway of the defendant with the Toledo, Wabash and Western railroad, in the city of Decatur, Illinois, and that the place where the plaintiff was so walking was a public thoroughfare, used by the citizens of said city, to pass and re-pass thereon, without hindrance or objection by the defendant; and if the jury further believe, from the evidence, that, while the plaintiff was so walking on said right of way of defendant, and that he was using due care and caution in walking thereon, an engine of the defendant was negligently and carelessly run upon and against the plaintiff, while said engine was under the control and management of the servants of the defendant, and that the plaintiff was injured by and through such negligence and carelessness of the servants of the defendant, then, in such case, the jury should find for the plaintiff."

And the following instructions asked by the defendant were refused:

"13.   The court instructs for the defendant, that defendant, by the law, had the right to the exclusive use of its right of way and tracks for the purpose of conducting its business as a common carrier, and that plaintiff had no right, by the law, to be upon such right of way, or to do anything which would delay the defendant in the prosecution of its legitimate business, or which would obstruct or impede the progress of the engines being lawfully used by defendant in its business. And if the jury believe, from the evidence, that the plaintiff was so upon the right of way of the defendant at the time he received the injury complained of, then, unless the jury believe, from the evidence, that Adams, the engineer (if they

believe, from the evidence, he was the engineer,) in charge
of the engine, saw the plaintiff, and saw that he was in dan-
ger, and could have prevented the injury, and would not, but
wilfully went on when he could have stopped, the jury must
find for the defendant.

"14.  If the evidence in this case shows that the injury
complained of happened on the ground or right of way used
and occupied by the defendant, and that the plaintiff had no
right to be where he was, then the defendant was not answer-
able for the injury unless it was done wilfully, because the
defendant, in the use of its road, is not bound to keep a look-
out on its own ground, as against those having no lawful right
on the road, but may use the same for its own purpose, in its
own way, and any person going on its track without permis-
sion, at such place, is there at his own peril and in his own
wrong, and therefore, if he is injured, he can not recover, be-
cause his own neglect or carelessness has contributed thereto,
unless the jury believe, from the evidence, that the defend-
ant was guilty of gross negligence, and wilfully injured the
plaintiff.

"15.  The court instructs for the defendant that, notwith-
standing the jury may believe, from the evidence, that plain-
tiff, and divers others, about the time of the alleged injury,
used the right of way and tracks of defendant as a foot-path,
yet such use did not relieve the plaintiff of the legal duty of
extraordinary care and caution at a place of danger, and such
use by plaintiff was none the less negligence on the part of
the plaintiff because it may have been frequent.

"16.  The court instructs for defendant that, when a party
is on the right of way or track of a railroad, and in danger,
the railroad company can not be held liable in damages for
injury that may be sustained, under such circumstances. unless
the evidence shows, to the satisfaction of the jury, that the
servant or servants of the company were guilty of negligence
so gross as to amount to a wilful disregard of the rights and

safety of the party in danger, and under such circumstances as show servants might avoid the difficulty, and would not; and if the jury believe, from the evidence in this case, that plaintiff received the injuries complained of while on the right of way of defendant, within 18 inches of the track, then, unless they believe, from the evidence, that the engineer in charge of the engine knew of the danger of plaintiff, and had it in his power to avert the danger and save plaintiff, and did not do so, the jury must find for the defendant."

The plaintiff recovered and defendant appealed.

Messrs. NELSON & ROBY, for the appellant.

Messrs. CREA & EWING, Mr. W. W. O'BRIEN, and Messrs. PARK & LEE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This cause was tried in the court below, and submitted to the jury, as manifested by the instructions given and refused, upon an erroneous theory, which was, that, from the fact of the citizens of Decatur having been in the habit of passing and re-passing over the portion of defendant's right of way, where the injury in question occurred, the plaintiff had acquired some right which affected the defendant's relation toward him, and that. at the time of the accident. he was in the exercise of a legal right. It very materially affects the question of the respective duties and liabilities of the parties, whether, at such time, the plaintiff was in the exercise of a legal right or not.

The right of way was the exclusive property of the company, upon which no unauthorized person had a right to be, for any purpose. The plaintiff was traveling upon defendant's right of way, not for any purpose of business connected with the railroad, but for his own mere convenience, as a footway, in reaching his home, on return from a search after his cow. There was nothing to exempt him from the character

of a wrong-doer and trespasser in so doing, further than the supposed implied assent of the company, arising from their non-interference with a previous like practice by individuals. But, because the company did not see fit to enforce its rights, and keep people off its premises, no right of way over its ground was thereby acquired. It was not bound to protect or provide safeguards for persons so using its grounds for their own convenience. The place was one of danger. and such persons went there at their own risk, and enjoyed the supposed implied license subject to its attendant perils. At the most, there was here no more than a mere passive acquiescence in this use. A mere naked license or permission to enter or pass over an estate, will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident. *Sweeny* v. *Old Colony and Newport Ry. Co.* 10 Allen. 373 ; *Hickey* v. *Boston and Lowell Ry. Co.* 14 id. 429 ; *Phil. and R. R. Co.* v. *Hummel,* 44 Penn. St. 375 ; *Gillis* v. *The Penn. Ry. Co.* 59 id. 129.

For all the purposes of this suit, the plaintiff stands in no more favorable condition than that of a wrong-doer and trespasser. He was not. at the time of the accident, in the exercise of a legal right, and was in the enjoyment of no more than a bare license or assent tacitly given, and his duty and the obligation of the company are to be measured, as in the case of one thus situated. Where both parties are equally in the position of right, which they hold independent of the favor of each other, the plaintiff is only bound to show that the injury was produced by the negligence of the defendant, and that he exercised ordinary care or diligence in endeavoring to avoid it. But where the plaintiff is himself in the wrong, or not in the exercise of a legal right, or was, at the time, enjoying a privilege or favor granted without compensation or benefit to the party granting it, and of whose carelessness complaint is made, he, the plaintiff, must use extraordinary care, before he can complain of the negligence of another. *Aurora Branch R. R. Co.* v. *Grimes,* 13 Ill. 585.

As a general rule, it is culpable negligence to cross the track of a railroad at a highway crossing. without looking in every direction that the rails run, to ascertain whether a train is approaching. Shearm. & Redf. on Negligence, sec. 488, and cases cited in note; and the same degree of care and precaution, of course, should be required on the part of one traveling laterally upon the track.

With increased force did this requirement apply to this plaintiff, who was not lawfully using the railroad track. He only says that, when he went on to the road, he looked and saw no engine. But this was not enough. He should have kept constant watch, while he was traveling along the track, for the approach of an engine. Besides, there was ample space between the tracks for plaintiff to have walked, without exposure to danger on either track; and there would seem to have been an omission of due care in not so walking in the place where he was, as not to place himself needlessly within striking distance of the engine.

The negligence of defendant alleged in the declaration is, in not ringing a bell or blowing a whistle before the engine crossed the railroad crossing, and in not slackening speed as it approached and passed over the crossing, and in running at a great rate of speed; and it is further insisted on in argument, as negligence, that there was no fireman employed on the engine, and that those in charge of the engine had their attention directed to the train on the other road, near the crossing, instead of forward, along the track. But the defendant, under the circumstances of this case, is clearly chargeable with no such negligence as this. It is only for wanton or wilful injury that the defendant is here chargeable, or such gross negligence as evidences wilfulness. Notwithstanding the plaintiff was unlawfully upon defendant's right of way, or not in the exercise of a legal right, and that his own lack of ordinary care exposed him to the risk of injury, yet the defendant might not, with impunity, wantonly or wilfully injure him. And if defendant's servants, who were in the

management of the engine, after becoming aware of plaintiff's danger, failed to use ordinary care to avoid injuring him, defendant might be liable. And this, as we conceive, is the only measure of liability to be claimed, under the facts of this case, laying out of view any breach of the ordinance, which will be hereafter referred to. *The Aurora Branch R. R. Co.* v. *Grimes, supra.*; *Galena and Chicago Union R. R. Co.* v. *Jacobs,* 20 id. 478 ; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Todd,* 36 id. 409 ; *Chicago and Alton Railroad Co.* v. *Gretzner,* 46 id. 74; Shearm. & Redf. on Negligence, secs. 25, 36 ; 1 Redf. Law of Railways, 464, 468 ; *The Tonawanda Railroad Co.* v. *Munger,* 5 Denio, 255 ; *Phil. and R. R. Co.* v. *Hummell,* and *Gillis* v. *The Penn. Ry. Co. supra.*

The principle embodied in defendant's refused instructions, is in conformity with the views here expressed, and, as applied to the facts of this case, we regard them as substantially correct, and that they should have been given.

The 2d instruction given for the plaintiff (and the 6th and 7th are liable to the same objection,) is erroneous, in intimating the idea that the use of defendant's road by citizens, to walk back and forth upon without hindrance or objection by defendant, constituted the same a public thoroughfare for people to walk upon.

The company did not, in any sense, hold forth an invitation to the public to use this track for foot travel. The railroad company owned the right of way, and had a clear right to a free track, which they had not yielded up or modified by any act of their own, and the jury should not have been misled, by the instructions, to think otherwise, as they well might have been.

The omission to notice other instructions given for the plaintiff, is not to be understood as an implied sanction of them. In so far as they may run counter to the views here announced, they must be deemed erroneous.

What has been said is without reference to the question of the rate of speed of the engine being greater than that pre-

scribed by the ordinance of Decatur, introduced in evidence. The declaration contains no allegation that there was a city ordinance regulating the speed of trains, and objection was made to the introduction of the ordinance in evidence, because the defendant had not been charged with a breach of the ordinance.

In *Illinois Central Railroad Co.* v. *McKee*, 43 Ill. 119, the negligence charged in the declaration was, in not maintaining and keeping in repair a fence; and it was held that testimony was inadmissible that a gate on the line of the fence had been left open, because there was no allegation of negligence in that respect, to give notice to the defendant of what he was to defend against. Under the authority of that case, we think the ordinance should have been excluded. Besides, the testimony as to the rate of speed being in excess of that prescribed by the ordinance, was conflicting, which rendered it important that the jury should have been correctly instructed in other respects. What effect running at a rate of speed prohibited by the ordinance might have upon the rights of the parties, we are to be understood as expressing no opinion in regard thereto.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*