## THE COLORADO CENTRAL R. R. CO. v. HOLMES.

UPON petition for rehearing, the following opinion was rendered:

STONE, J. The decision of this court adversely to the plaintiff, was based upon two principal conclusions, derived from the testimony: first, that she was guilty of gross and culpable negligence in going upon and walking along the railway tracks of the defendant, at the place where the injury to her occurred; and, second, that the defendant could not, by the exercise of ordinary care, have avoided the injury, notwithstanding the contributory negligence on her part.

The rehearing is sought upon this last proposition. Counsel for petitioner takes issue with the court upon the conclusions deduced from the testimony, and also questions the correctness of the court in its setting forth in the opinion certain portions of the testimony itself.

After patiently going over the entire record, and closely examining it in connection with the opinion, and with the lengthy petition for rehearing, and comparing the statements of the evidence in each, I am more than ever satisfied of the correctness of the opinion, and shall only proceed to point out a few of the most patent errors into which counsel has fallen, through what may be charitably attributed to his zeal for his client.

Referring to his allegations of recklessness in the railway management at the time of the injury to plaintiff, the petition says:

"As to the first of plaintiff's propositions, this court has in effect said, that making a flying switch under the attendant circumstances, in a populous part of the city of Denver, is so entirely proper that a jury should not say whether it was recklessness or not. With this conclusion we are content, notwithstanding the courts of every other State which have passed upon it, do not hesitate to characterize such management of a train as gross carelessness; and in the case of *Brown* v. *The N. Y. C. R. R.* 32 N. Y. 602, the court added 'we should hesitate to say the company could not be held to a criminal responsibility.'"

This court announced no such conclusion as counsel intimates. The *locus in quo* was not in a populous part of the city of Denver. On the contrary, as the testimony shows, it was within the switching yard of the railway company, at the north side of the town, where there was no street or other public crossing, and where only a few small houses were scattered about in the Platte river bottom, and where, as witness, Kirchoff, who lived there, stated, the weeds grew in places along the track from six to eight feet high.

Nor have the courts all held as counsel asserts. The opinions have been expressed upon the particular facts presented. In the New York case cited, the flying switch was made where the tracks crossed the main street "at a point of much travel in a densely built portion of the village," and where in approaching the street crossing "the view of the railway was greatly obstructed by houses, trees, shrubbery and fences." The collision occurred with a vehicle which was crossing the track in the street, and had a right to be there and to cross at the time, and no warning or signal was given of the approach of the cars. There is no point in the citation of such a case; and this was fully examined in the opinion.

Again counsel says in his petition:

"If we leave out of question the facts (as the court has expressly done), that this was a flying switch, being made in a populous part of the city of Denver, upon a part of the track crossed at short intervals by public streets," etc., etc.

The witness, Rollins, the civil engineer, who laid out and platted the tracks and yard of the railway company, testifies that 18th street ends short of the railway tracks: that "it does not cross any track; the accident occurred on no street and not on ground where a street has been laid out."

Witness Kirchoff testifies: "There is no one living between 18th and 19th streets on the side next the river; there is no house there; people that pass there come from beyond 19th street; nineteenth street is not graded; is two or three feet and in places three or four feet below the grade; is very uneven, and water standing over it on the block next the railway track." He stated in another place that there were twenty-five or thirty houses up 19th street toward the river.

This testimony as to streets and population in that vicinity, is not contradicted, or sought to be, anywhere in the whole record.

Counsel says: "The reason we are in earnest, is because the opinion, if it stands, practically deprives us of another trial; it is as though this court should order a dismissal of the cause, or a judgment for the defendant."

This statement seems merely begging the question. The decision complained of does not preclude a better showing or another trial.

The witnesses all agree that when plaintiff left the main track, on hearing the alarm whistle, she walked diagonally across the yard to the second switch, or third track. The plaintiff testifies that she was trying to get off all the tracks. In this she is supported by her witnesses, Breck and Kirchoff. Defendant's witnesses, Mahoney and Martin, testify that when she reached the second switch, she turned and walked along the track toward the depot, on the ends of the ties.

If the first statement be correct, the train men had reason to believe the plaintiff would get out of the way of the cars. If the second statement be true, that she was walking on the ends of the ties, her danger was not so great, nor as much notice necessary to enable her to avoid injury, as if she had been walking between the rails. A single step would take her out of the way of the cars.

The suggestion of counsel, that Mahoney's testimony was to the effect that plaintiff walked on the third track a distance of one hundred feet, is not correct. A fair interpretation of his testimony is, that she walked in this manner one hundred feet after he discovered her on the main track, when she was one thousand feet in advance of the train. Kirchoff says she left the main track thirty or thirty-five feet after passing his house. She then walked diagonally over to the third track. Martin says she was about one hundred feet ahead of the cars when they reached the switch, which was shown to be opposite Kirchoff's house. It is apparent therefore from all the testimony that a very short interval transpired from the moment plaintiff reached the third track until the accident occurred.

If it be admitted that the cars were stopped in from thirty to sixty feet thereafter, as argued by counsel in their petition for rehearing, such fact strongly corroborates defendant's witnesses, as to the low rate of speed at which the train was moving on the switch, and is inconsistent with the charge of gross negligence in its management.

It is conceded that plaintiff was guilty of gross negligence in walking upon these tracks and switches on the private grounds of the defendant, where she had no right to be. It was also gross negligence to cross or walk upon the switches without looking behind her or taking any precaution to ascertain whether cars were moving thereon. She assumed that there were no moving cars upon the switches at her peril.

Under no view of the case can plaintiff lawfully recover, unless the railroad company is chargeable with gross negligence. The servants of the company may not have done the best that could have been done under all the circumstances, nor does the law require this ; but we are satisfied that the evidence did not warrant the jury in finding, under the circumstances in proof, that they fell so far short of their duty as to make them justly chargeable with gross negligence, still less with a degree of negligence which amounts to recklessness. The charge that plaintiff was wantonly run down, is unsupported by the record.

In a rather recent case, decided by the court of appeals of Maryland, the following language upon this point is employed :

"We have said more than once that cases may and do occur, where the court is required to declare some plain act of carelessness on the part of the plaintiff to be in *law*, such contributory negligence as will prevent a 'recovery; or on the other hand, where the proof of negligence on the part of the defendant is so slight and inconclusive in its nature as to demand from the court an instruction as to its legal insufficiency to prove negligence, in order to prevent the jury from indulging in wild speculation or irrational conjecture. In this, as in all other cases, the burden of proof is on the plaintiff, and although it is the province of the jury to decide matters of fact, when evidence legally sufficient is submitted to their consideration, yet this *legal sufficiency* is a question of law, of which the court is the *exclusive* judge." *Lewis* v. *The Baltimore & Ohio R. R. Co.* 38 Md. (Court of Appeals), 588. See, also, *The Ill. Cent. R. R. Co.* v. *Godfrey*, 71 Ill. 500, which is in

point upon the principal questions raised in this case. A finding or conclusion from the evidence that either there was want of ordinary care on the part of the defendant, or that by the exercise of such care, the injury to plaintiff could have been avoided, notwithstanding her own gross and contributory negligence, is unwarrantable and cannot stand.

Reluctant as we are to disturb the finding of a jury upon the facts, we shall not hesitate to do so where the impartial administration of justice requires it to be done.

The motion for a new trial should have been allowed.