# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 16213.—Judgment affirmed.)

LOUIS J. BREMER, Admr., Defendant in Error, *vs.* THE
LAKE ERIE AND WESTERN RAILROAD COMPANY, Plain-
tiff in Error.

*Opinion filed June 18, 1925—Rehearing denied October 7, 1925.*

1. NEGLIGENCE—*general rule as to liability of railroad company
for injury to trespasser.* A railroad company owes no duty to a
party riding on its train as a trespasser except to refrain from will-
fully or wantonly injuring him, but to raise an inference of wanton
and willful negligence it is not necessary to prove that the com-
pany's servants were actuated by ill-will directed specifically toward
the trespasser or that they knew he was in such position as likely
to be injured.

2. SAME—*plaintiff must prove duty to protect him from injury.*
It is necessary, in an action to recover damages for personal in-
juries, to allege and prove the existence of a duty on the part of
the defendant to protect the person injured from the injury of
which he complains, the failure of the defendant to perform that
duty, and the resulting injury.

3. SAME—*when question of willfulness of injury to trespasser
is for the jury.* In an action against a railroad company for the

wrongful death of a trespasser killed in a collision, if there is any evidence fairly tending to show such a gross want of care by the servants in charge of the trains as indicates a willful disregard of consequences or a willingness to inflict injury, it is for the jury to say whether such conduct amounts to wantonness or willfulness, even though the presence of the trespasser was unknown.

4. SAME—*what gross negligence will justify the presumption of wantonness or willfulness.* Gross negligence which will justify the presumption of willfulness or wantonness is such as to imply a disregard of consequences or a willingness to inflict injury.

5. SAME—*what amounts to constructive willfulness to inflict injury.* An intentional disregard of a known duty necessary to the safety of the person and an entire absence of care for the life, the person or the property of others, such as exhibits a conscious indifference to consequences, make a case of constructive or legal willfulness such as charges the person whose duty it was to exercise care with the consequences of a willful injury.

6. SAME—*appointment of administrator cannot be attacked collaterally.* The probate court has jurisdiction of the appointment of administrators, and its order granting letters is not open to collateral attack in an action for wrongful death on the ground that the decedent was not a resident of the county.

7. SAME—*what argument is not prejudicial to defendant.* In an action against a railroad company for the wrongful death of a trespasser riding on a train, argument of plaintiff's counsel that the deceased was a workingman who had been in the employ of the defendant as shown by the evidence, that he had a family, and that he was not an ordinary "hobo," as the attorney for the defendant stated in his argument, is not improper, as the fact that the deceased was supporting a family is a matter to be considered by the jury in estimating damages.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

H. M. STEELY, and H. M. STEELY, JR., (JOHN B. COCKRUM, and J. G. McKAY, of counsel,) for plaintiff in error.

CLARK & HUTTON, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the Third District affirmed a judgment of the circuit court of Vermilion county for $5000 against the Lake Erie and Western Railroad Company in favor of Louis J. Bremer, as administrator of the estate of Hilary Shircliff, and on the petition of the defendant the record has been brought here by a writ of *certiorari* for review.

The declaration on which the cause was submitted to the jury consisted of three counts, each charging that the engineer of a west-bound train of the defendant willfully, wantonly and recklessly ran his train past an order-board displaying a stop signal at East Lynn, a station on the defendant's railroad, and that in consequence of such willful, wanton and reckless conduct of the engineer the train collided with the engine of an east-bound train on which Hilary Shircliff, the deceased, was riding and injured him so badly that he died. The defendant filed the general issue and a special plea, to which a demurrer was sustained. On the trial the defendant moved for a directed verdict in its favor and its motion was overruled.

There was no conflict in the evidence, which disclosed the following facts: The defendant is an interstate carrier whose railroad runs from Sandusky, Ohio, to Peoria, Illinois, through the villages of Templeton, Indiana, and East Lynn and Rankin, Illinois. Shircliff was employed as a section hand on the defendant's railroad, and on Sunday morning, October 15, 1922, went from his home in Templeton as a passenger on a train of the defendant to Rankin to try to get a job as fireman. He was informed that there was no vacancy, and in a few minutes started to return to Templeton on a special train consisting of an engine and caboose. None of the trainmen knew that he was on the train, which started east from Rankin about nine o'clock.

The road is a single track to East Lynn, about four and a half miles east of Rankin. At the same time another special freight train was coming west, and the station agent at East Lynn received orders from the train dispatcher about nine o'clock that the two trains should meet at East Lynn, the east-bound train to take the siding. The station agent displayed the signal requiring the engineer on the west-bound train to stop at the station. It was a very foggy morning but the signal was visible for some distance. The west-bound train went by about 9:10 o'clock without stopping, going thirty or thirty-five miles an hour. As it came toward the station its headlight was visible 1800 or 2000 feet away. One witness saw the stop signal from a distance of 40 or 50 feet east of the station as the train went by, and another from a distance of 150 feet east of the station. The station agent notified the dispatcher and the latter notified the agent at Rankin, but the extra from Rankin had already gone. The two trains met about one and three-quarters miles west of East Lynn and Shircliff and the fireman of the east-bound train were killed. The engineer of the west-bound train did not testify. The engineer of the east-bound train testified that he saw the headlight of the other train and supposed they were at the East Lynn switch. He first saw Shircliff about thirty seconds before he jumped from his engine. Shircliff was coming over the coal gates from the tender into the cab.

The question on the motion to direct the verdict is, Do the facts fairly tend to prove that the act of the engineer in disregarding the stop signal was a willful, wanton and wrongful act which was the proximate cause of Shircliff's death? Shircliff was not a passenger and was not in the service of the defendant on the train on which he was riding and had no right to be on the train but was a trespasser. There was no relation between him and the defendant which imposed a duty on the latter to use any care to avoid injuring him except the duty to refrain from willfully or

wantonly injuring him. *Toledo, Wabash and Western Railway Co.* v. *Brooks,* 81 Ill. 245; *Toledo, Wabash and Western Railway Co.* v. *Beggs,* 85 id. 80; *Chicago, Burlington and Quincy Railroad Co.* v. *Mehlsack,* 131 id. 61; *Illinois Central Railroad Co.* v. *King,* 179 id. 91.

It is the position of the plaintiff in error that the deceased was a trespasser on the train of the plaintiff in error, which had no knowledge of the deceased's presence or reason to suspect it, and that it owed no duty to him except to refrain from wantonly or willfully injuring him after his presence in a place of danger was known to the plaintiff in error or its servants. It is necessary in an action to recover damages for personal injuries to allege and prove the existence of a duty on the part of the defendant to protect the person injured from the injury of which he complains, the failure of the defendant to perform that duty and the resulting injury. (*McAndrews* v. *Chicago, Lake Shore and Eastern Railway Co.* 222 Ill. 232; *Miller* v. *Kresge Co.* 306 id. 104.) The plaintiff in error contends that in this case no duty is shown a breach of which was the cause of the injury, and relies upon the proposition that because the deceased was a trespasser, the only duty which the plaintiff in error owed him was to refrain from wantonly or willfully injuring him after his presence in a place of danger was known to the defendant or its servants. In its brief many cases are cited to the proposition that after discovery of the presence of a trespasser, and not until then, it is the duty of a railroad company or its servants to avoid willfully or wantonly injuring such trespasser. The proposition stated is not the law of this State and the cases cited do not support it. In most of these cases the injured plaintiff was a trespasser on the track of a railroad company, and there was no charge in the declaration under which evidence of willfulness or wantonness could have been received, or if there was such a charge, it was held that the evidence did not sustain it. Of this character are these

cases: *Illinois Central Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Illinois Central Railroad Co.* v. *Hetherington,* 83 id. 510; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id. 416; *Roden* v. *Chicago and Grand Trunk Railway Co.* 133 id. 72; *Wabash Railroad Co.* v. *Jones,* 163 id. 167; *Wabash Railroad Co.* v. *Kingsley,* 177 id. 558; *Illinois Central Railroad Co.* v. *O'Connor,* 189 id. 559; *James* v. *Illinois Central Railroad Co.* 195 id. 327; *Illinois Central Railroad Co.* v. *Eicher,* 202 id. 556.

In *Illinois Central Railroad Co.* v. *Godfrey, supra,* it was held when a trespasser on the track of a railroad company is struck and injured by an engine, the company can be held liable only for wanton or willful injury or such gross negligence as evidences willfulness. It is said in the opinion: "It is only for wanton or willful injury that the defendant is here chargeable, or such gross negligence as evidences willfulness. Notwithstanding plaintiff was unlawfully upon defendant's right of way or not in the exercise of a legal right, and that his own lack of ordinary care exposed him to the risk of injury, yet the defendant might not, with impunity, wantonly or willfully injure him. And if defendant's servants who were in the management of the engine, after becoming aware of plaintiff's danger, failed to use ordinary care to avoid injuring him, defendant might be liable. And this, as we conceive, is the only measure of liability to be claimed, under the facts of this case." The distinction is clearly made that a defendant owes the duty of ordinary care to a trespasser known to be in danger, to avoid injuring him. If by the exercise of ordinary care injury can be avoided the defendant is liable for the failure to use such care, but to a trespasser whose presence or whose danger is unknown there is no duty to exercise ordinary care, though there is a duty not to injure him willfully or wantonly or by such gross negligence as evidences willfulness. The rule is stated in many of the cases cited that the defendant is not bound to anticipate the presence of tres-

passers on its property or to keep a lookout for them, and that its duty to exercise care to avoid injury to trespassers begins only when their presence is known. The rule is equally well settled that for an injury occasioned by the willful or wanton act of the defendant, or by such gross negligence as is equivalent to wantonness or willfulness, the defendant is liable. *Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596; *Peirce* v. *Walters,* 164 id. 560; *East St. Louis Connecting Railway Co.* v. *O'Hara,* 150 id. 580; *Illinois Central Railroad Co.* v. *King, supra; Chicago Terminal Railroad Co.* v. *Kotoski,* 199 Ill. 383; *Illinois Central Railroad Co.* v. *Leiner,* 202 id. 624; *Neice* v. *Chicago and Alton Railroad Co.* 254 id. 595.

In the first of these cases the running of a train at a high rate of speed in a crowded city, over street crossings, upon unguarded tracks so connected with the public street and so apparently the continuation of a public street as to be regarded by ordinary citizens as located in a public street, along a portion of such tracks where persons were known to be passing and crossing every day, in violation of a city ordinance as to speed and without warning of the approach of the train by the ringing of a bell, was held to be such gross want of care and regard for the rights of others as to justify the presumption of willfulness. In *East St. Louis Connecting Railway Co.* v. *O'Hara, supra,* it was considered unnecessary, in order to raise an inference of wanton and willful negligence, that there should be ill-will directed specifically to the plaintiff, or that the defendant's servants should have known that he was in such a position as to be likely to be injured where they were running the engine in the dark without a headlight or a bell ringing, and at a high and dangerous rate of speed where persons were likely to be passing. In *Wabash Railroad Co.* v. *Jones, supra,* it was said: "The fact of general use by the public of a track, so as to create a probability of their presence, might make an act which would otherwise be merely negligent

318–2

so reckless as to indicate a disregard for life or a general disposition to do injury." In the cases of *Peirce* v. *Walters, supra,* and *Chicago Terminal Railroad Co.* v. *Kotoski, supra,* the servants of the railroad company were aware of the position of the plaintiff and his danger, and in the case of *Illinois Central Railroad Co.* v. *King, supra,* a brakeman of the defendant discovered the plaintiff stealing a ride on the rods under a freight car, and as the train was running six or eight miles an hour ran alongside the car, caught the plaintiff by the coat collar, pulling him out, and in so doing the right foot of the plaintiff was run over and crushed so that it had to be amputated. In these cases the defendants were held liable for the willful and wanton acts of their servants.

*Illinois Central Railroad Co.* v. *Leiner, supra,* is a case of a different character,—not different in principle from the present case. It was an action by an administrator for the death of his intestate, who was a freight conductor of the defendant. He had arrived at East St. Louis with his train on a Saturday night, and desiring to ride to his home in Sparta to spend Sunday, obtained a pass permitting him to ride on a certain passenger train leaving East St. Louis at about nine o'clock but too late for him to take the train. He then applied for transportation to the conductor of a freight train which was not authorized to carry passengers, but the conductor, without requiring any evidence of his right to travel on the freight train, permitted him to do so and he went to sleep in the caboose. While he was asleep in the caboose the train arrived at Belleville, where, after standing on the main track about twenty minutes, it was run into by a following train running at a high rate of speed in violation of a rule of the company requiring the following train to approach the station at which the first train was standing under control expecting to find the main track occupied, and also in violation of an ordinance of the city of Belleville limiting the speed of the train to

six miles an hour. The flagman of the train on which
the deceased was riding was also required by a rule of the
company to go back 3600 feet and protect the train, but
though the conductor called his attention to the fact that
there was an extra train following them and told him to
keep his eyes open, the flagman did not go back and pro-
tect the train but got on the train and went forward to
the office in the station to get orders. There was a sharp
curve about 1500 feet west of the station, from which
there was a down-grade to the station of one foot in
one hundred, and when the train, with two engines and
thirty-four cars, reached that point, the engineer, seeing in
the darkness for the first time the red light on the rear of
the train standing at the depot, attempted to lessen the
speed of his train but was unable to do so to any consid-
erable extent, and it struck the standing train, telescoping
the caboose and killing the deceased. It was insisted by the
railroad company that the deceased was a trespasser. The
court, however, did not think it necessary to consider that
question, but held that whether he was a trespasser or not,
the company would be liable if he was killed through the
wanton or reckless conduct of the company's employees.
The court held that it was a question of fact to be deter-
mined by the jury whether the defendant was guilty of
willful or wanton conduct causing the injury.

In *Neice* v. *Chicago and Alton Railroad Co. supra,* it is
said that if persons on depot grounds and platforms pro-
vided by the railroad company for the use of the public in
the transaction of its business "are there for a legitimate
purpose in connection with the business of the company
they have a right to demand the exercise of reasonable
care for their safety. If they are simply idlers, loiterers or
trespassers the duty of the company is only to abstain from
willfully or wantonly injuring them. But the duty is ow-
ing to an indeterminate part of the public generally, and if
there is a disregard of that duty, one of the general pub-

lic who happens to be in such position as to be the sufferer
from the violation of the duty will have a right of action
for any injury he sustains. To run a train in the night
time over unlighted station grounds without a headlight, and
without any warning by bell or whistle, along a platform
where persons may reasonably be expected to be, is evi-
dence tending to prove a wanton and reckless disregard of
the safety of such persons. In such a case it is not nec-
essary that there should be specific knowledge of an indi-
vidual° on the track or platform or specific ill-will toward
or an intention to injure an individual."

The duty which a railroad company owes to a trespasser
before it has knowledge of his presence or danger is, not
to do any willful or wanton act to injure him. This duty,
as was said in the *Neice case, supra,* is owing to the public
generally and is applicable to any one of the general public
who happens to be in such a position as to be the sufferer
by the violation of the duty, and such sufferer will have a
right of action for any injury he sustains. The case of *East
St. Louis Connecting Railway Co.* v. *O'Hara, supra,* is an
illustration of this rule, in which it was held that where
the defendant was running its engine in wanton and willful
disregard of the rights and safety of the public generally,
it was not necessary, in order to raise an inference of wan-
ton and willful negligence, to prove that the defendant's
servants were actuated by ill-will directed specifically toward
the plaintiff or to have known that he was in such a posi-
tion as to be likely to be injured.

If there is any evidence in the record fairly tending to
show such a gross want of care as indicates a willful dis-
regard of consequences or a willingness to inflict injury,
then it is a question to be determined by the jury whether
the negligent conduct of the defendant amounted to wan-
tonness or willfulness. (*Walldren Express Co.* v. *Krug,*
291 Ill. 472.) What degree of negligence the law consid-
ers equivalent to a willful or wanton act is as hard to de-

fine as negligence itself, and in the nature of things is so dependent upon the particular circumstances of each case as not to be susceptible of general statement. The gross negligence which will justify the presumption of willfulness or wantonness is such as to imply a disregard of consequences or a willingness to inflict injury. (*Lake Shore and Michigan Southern Railway Co.* v. *Bodemer, supra.*) An intentional disregard of a known duty necessary to the safety of the person, and an entire absence of care for the life, the person or the property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness such as charges the person whose duty it was to exercise care with the consequences of a willful injury. (1 Thompson on Negligence, secs. 20, 22.)

The train was running through a heavy fog at a high rate of speed, it was the duty of the engineer to note the signal to stop for orders, and it was highly important to the safety of the property of the railroad company and of shippers whose goods the trains were carrying, and the lives and safety of the train crews as well as any other persons who might be on the trains, that the persons in charge of the trains should receive the orders and know that the tracks were clear before they proceeded. It was for that purpose that the signal system was installed, and the observance of the rules in regard to signals was the only safety for persons engaged in the operation of the trains or on the trains. The observance of the duty was essential to the safety of the trains and of all property and persons on them. There was evidence tending to show that the failure to heed the signal was the result of willful purpose, and it was a question of fact for the determination of the jury whether the evidence showed that the negligence of the defendant was of that gross character which evidences willfulness or wantonness.

The plaintiff in error contends that the court erred in permitting the agent at East Lynn to testify that he heard

the train dispatcher give the order to the agent at Rankin
and heard the latter repeat the order, to give his opinion as
to the rate of speed of the train at and after running by
the signal, to testify that he told the train dispatcher that
the train had run by his signal and that the train dispatcher
called the operator at Rankin to inquire if the east-bound
train had left. All these things occurred after the train had
gone west, and the evidence was of no importance to the
issue, but its admission could not have confused the issue
or prejudiced the defendant.

Complaint is made of instructions given and refused, but
the rulings of the court were in accordance with the views
of the law which have been expressed. The action was
not for mere negligence but for willful and wanton injury.
Whether it was such willful and wanton injury was a ques-
tion of fact to be determined by the jury. The instructions
of the plaintiff in error and its argument here are based
upon the theory that there was no duty owing to the deceased
until his presence in a place of danger was known and there
was no evidence of a willful or wanton injury. In the dis-
cussion of the motion to direct the verdict we have held to
the contrary of that theory.

It is contended that the court erred in sustaining the
demurrer to the special plea, which alleged that Shircliff at
the time of his death was not a citizen or resident of Illi-
nois but was a citizen and resident of Indiana, whose domi-
cile was in Benton county, in that State, where administra-
tion had been granted 'upon his estate by the circuit court
of that county; that at the time of his death he owned no
real or personal estate in Illinois and no rights or credits
that were liable to be dissipated, and that no conditions
existed under the law authorizing the appointment of the
public administrator of Vermilion county, Illinois, admin-
istrator of his estate. The probate court has jurisdiction of
the appointment of administrators, and its order granting
letters is not open to collateral attack on the ground that

decedent was not a resident of the county. *Balsewicz* v. *Chicago, Burlington and Quincy Railroad Co.* 240 Ill. 238; *Keystone Steel and Wire Co.* v. *Industrial Com.* 289 id. 587.

The plaintiff in error contends that the conduct of the attorneys of the defendant in error in the argument of the case was of such a character as to inflame the passions of the jury and prejudice the plaintiff in error in the consideration of the evidence. The only thing objected to as to which there is a ruling of the court which we are asked to review is in connection with the statement of the attorney for the defendant in error that the attorney for the plaintiff in error told the jury that the deceased was a "hobo," and the contradictory statement of the attorney for the defendant in error that the man was not a hobo but was "an ordinary, honest, humble laboring man, trying to make an honest, humble living for his wife and little baby, as under the law he had a right to do, and it ill becomes hired counsel upon behalf of the railroad, on taking the life of this father, this husband, to go before a jury and say he is a hobo, when they knew better. They know he has been in their employ." The attorney for the plaintiff in error had argued that the deceased's relation to the plaintiff in error and its servants was the same as that of any hobo who was stealing a ride on a train. Whether the deceased was actually a hobo or not was not material to the issue, but the fact that he was a laboring man in the employ of the company, supporting his family by his work, and not a hobo, was a matter to be considered by the jury in estimating the damages if a verdict should be found for the plaintiff, and we do not regard the language used as being calculated to unfairly prejudice the plaintiff in error before the jury.

The judgment will be affirmed.     *Judgment affirmed.*