EDWARD C. HAYE, 1042; GLEN HAYE, BY HIS FATHER AND NEXT
FRIEND, EDWARD C. HAYE, 1043; WILLIAM A. POULTON, 1044;
GLENN FLANDERS, 1045; JOHN H. ANDERSON, 1055; THOMAS
PREMOZIC, 1061; ANNA PREMOZIC, 1062; MARY PREMOZIC BY
THOMAS PREMOZIC, HER FATHER AND NEXT FRIEND, 1063; Claim-
ants, *vs.* STATE OF ILLINOIS.

*Opinion filed May 12, 1927.*

NON-LIABILITY OF STATE—*not liable for injuries sustained by visitor at
State training ground of Militia.* One who visits the camp of training
ground of the Illinois National Guard to view its maneuvers, either out of
pleasure or curiosity, does so at his own risk, and the State is not liable for
injuries sustained by him while on the premises.

SAME—*claimant presumed to have knowledge of risk.* Persons who visit
the training ground of the Illinois National Guard are presumed to know
that dangerous military movements illustrative of warfare may be carried
on, and the State is not bound to protect him while he is on the grounds for
his own pleasure or convenience.

SAME—*permission to enter ground imposes no legal liability or duty.* The
mere permission given a visitor to enter the training ground of the Illinois
National Guard to view demonstrations of the Army does not create a duty
or impose an obligation on the State to provide against the danger of acci-
dent.

SAME—*licensee when State not liable for injuries sustained by.* Where
claimant entered the premises without invitation but by mere permission,
he cannot recover for injuries sustained by him, unless the injuries were
intentionally or willfully inflicted.

SAME—*licensee has no cause of action when.* Where claimant is a mere
licensee he has no right of recovery on account of an injury sustained by
him through the negligence of the licensor in the place where he is permitted
to enter.

SAME—*volunteer not entitled to recover.* Where claimant voluntarily
and unnecessarily encounters danger he does so at his own risk.

SOCIAL JUSTICE AND EQUITY—*when award cannot be made under rule.* The
court has no power to allow a claim against the State as an act of social
justice and equity, unless the claim is based upon some principle of law or
equity.

LARGE & RENO and FRANK M. RYAN, for claimants.

OSCAR E. CARLSTROM, Attorney General; ROY D. JOHNSON,
Assistant Attorney General, for respondent.

Mr. JUSTICE THOMAS delivered the opinion of the court:

On August 23, 1925, during the annual encampment of the
Illinois National Guard at Camp Grant, a chemical warfare
demonstration was carried on for the instruction of the troops.

The demonstration consisted of laying down a smoke screen in front of a column of troops that was advancing towards the screen and firing rifle grenades. The purpose of the smoke screen was to demonstrate that persons in front of it could not see what was taking place behind it. The rifle grenades were filled with phosphorus, and when they exploded the phosphorus burned, giving off a dense white smoke. The demonstration took place on the parade ground of the camp, the troops moving from the northeast to the southwest. On the left of the advancing troops, and parallel with their line of march, was a road or street which intersected another street that ran in a northerly and southerly direction across the west or southwest end of the parade ground. The smoke screen was laid down four or five hundred feet northeast of this street and at right angles with the line of march of the troops. The ground north and east of these two streets was reserved for the demonstration, and is spoken of in the testimony as the restricted area. The demonstration was under the direct supervision of Major Alfred de Roulet, who carried it out under the orders of his superior officers in the Thirty-third Division. Before the demonstration started, Major de Roulet had sentries posted around the parade ground and himself instructed them to allow no persons on the restricted area. It was the second Sunday of the encampment, and there were many people at the camp to witness the various maneuvers of the troops, the number being estimated by the witnesses from 3000 to 5000. Most of the people came in automobiles, and those who stopped to view the chemical warfare demonstration parked their cars on the sides of the parade ground. After the column of troops had moved a pre-arranged distance from its starting point the candles used to produce the smoke screen were ignited. They gave off a dense white smoke, through which nothing could be seen. As the troops advanced behind this smoke screen, they fired their rifle grenades. Many people, including Glenn Flanders, claimant in this case, got out of their cars and were standing in front of them to better view the maneuvers. When the smoke screen started some of the people began moving into the restricted area to get a better view. Guards and officers endeavored to keep them back and told them there was danger. While claimant was standing in front of his car watching the demonstration one of the grenades burst near him, setting his

clothing afire and burning him seriously, and he has filed this claim against the State for $10,000.00 damages.

The Attorney General filed a general and special demurrer to the declaration. Evidence has been introduced by both the claimant and the State, and the case will be heard as though a general traverse of the declaration had been filed.

It is alleged in the declaration and urged in argument that claimant was at Camp Grant at the invitation of the officials in charge of the troops, but the evidence does not sustain this contention. While the newspapers published the fact that the demonstration would take place, it was published as an item of news, the orders for all camp activities being open to inspection by all newspaper men. The demonstration was not for the instruction of the public, but for the soldiers at the encampment. It was a military demonstration that was essential for the proper training and instruction of the troops, and was given only for their benefit. The fact that the demonstration was not secret and that all persons who desired to do so were permitted to enter the camp to view it did not amount to an invitation to claimant to be present. In order to entitle claimant to the status of a person entering the camp by invitation, it must appear that his going there was of advantage to the occupants. (20 R. C. L., p. 69.) There is no such showing in the record. On the contrary, the evidence shows he was present merely for his own pleasure or curiosity. He was in no way connected with the encampment or any of its activities and was at most but a mere licensee. "The principle appears to be that invitation is to be inferred where there is a common interest or mutual advantage, while license is inferred where the object is the mere pleasure or comfort of the person using it." (*Bennett* v. *L. & N. R. R. Co.*, 102 U. S. 585.) The difference between a visitor who is on the premises of another by invitation and as a licensee is stated in our Supreme Court in *Pauckner* v. *Waken*, 231 Ill. 276, in the following language: "It will be found that the distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming. Permission involves leave and license, but it gives no right. If one avail himself of permission to cross another's land, he does so by virtue of the license and not of right. The permission of license is a justification for his entry, and while he is not technically a trespasser, yet the

duty of the owner to guard him against injury is governed by the rules applicable to trespassers.''

Camp Grant belongs to the State, and is maintained and used to give military instruction and training to the National Guard. Such instruction and training necessarily include dangerous military maneuvers illustrative of actual warfare. Claimant voluntarily went to the camp to view these maneuvers, either out of curiosity or for his own pleasure, and he did so at his own peril. The State was not bound to protect him or provide safeguards for him while he was on its grounds for his own pleasure or convenience. The place was one of danger—a place where a demonstration of actual warfare was to be given—and claimant went there at his own risk and enjoyed the supposed implied license subject to its attendant perils. The mere permission or license to claimant to enter the camp and view the demonstration did not create a duty or impose an obligation on the part of the State to provide against the danger of accident. (*I. C. R. R. Co.* v. *Godfrey,* 71 Ill. 500; *Wabash R. R. Co.* v. *Jones,* 163 Ill. 167.). It is well settled that the owner of the lands assumes no duty to one who is on his premises by permission only, and as a mere licensee, except that he will not wilfully and intentionally injure him. (20 R. C. L., pp. 59-69; *Hansen* v. *Cromoll,* 232 Ill. App. 485, and cases there cited.) There is no evidence in this record that claimant was wilfully or intentionally injured. On the contrary, the evidence shows that the officers in charge of the demonstration took all reasonable precautions to prevent injuries to visitors who were at the camp to view the demonstration. As claimant went on the premises without invitation, and merely by permission, he cannot recover for the injuries received unless they were wilfully or intentionally inflicted. ''Where a person is a mere licensee he has no cause of action on account of an injury received through the negligence of the licensor in the place he is permitted to enter.'' *(Hansen* v. *Cromoll, supra.)*

If it were conceded that the injuries to claimant were the result of the negligence of the officers in charge of the demonstration, it does not follow that the State is liable for such injuries. When officers of the National Guard so conduct the military operations for the instruction and training of the troops as to menace the life or property of a citizen while on his own premises they thereby become trespassers and are not representatives of the State. *(Joos* v. *Ill. N. G.,* 257 Ill.

138.) If the State is not liable for injuries suffered by one on his own premises through the negligence of officers of the National Guard, certainly it is not liable for injuries received by one while on the training grounds of the guard for his own pleasure or convenience.

The maneuver which claimant was watching at the time he was injured was a demonstration of actual warfare. He went to the parade ground for the express purpose of seeing it. He knew, or should have known, the demonstration was dangerous, for all actual warfare demonstrations are attendant with danger. His going there to view the demonstration was a voluntary and unnecessary risk. It is well established that one who voluntarily and unnecessarily encounters danger does so at his own risk. That the smoke screen prevented the soldiers behind it from seeing those in front of it was obvious to all. It was also apparent that the soldiers began firing the rifle grenades a considerable distance back of the screen and were moving toward it firing as they came. Under such circumstances common prudence should have caused claimant to at least remain in his car, where the danger would have been less. He did not do so, but got out of it and went about 15 feet in front of it on the parade ground, where he was burned by an exploding grenade.

That there can be no recovery where the person injured was guilty of contributory negligence is so well settled that citation of authorities is unnecessary. And the fact that the negligence of the injured party was slight makes no difference—if his negligence contributed in any degree to the injury, he cannot recover. We have carefully read this record and considered the arguments urged in support of claimant's demand and have arrived at the conclusion that he is not entitled to any award.

Claimant's attorneys urge that all the persons injured at the demonstration should be compensated by the State as an act of social justice. This court has no power to allow any claim against the State unless it is based upon some principle of law or equity.

The claim is denied and cause dismissed.

It was stipulated by the Attorney General and attorneys for claimants in cases No. 1042, 1043, 1044, 1055, 1061, 1062 and 1063 that the evidence taken in this case should apply to them also insofar as it might be pertinent. As the same

reasons and principles of law apply to them as do to this case, they will each be denied and dismissed accordingly.