Stefan Gavurnik and Anna Gavurnik, Administrators of the Estate of Stefan Gavurnik, Deceased, Appellees, v. Benjamin F. Miller, Appellant.

Gen. No. 8,990.

Opinion filed February 10, 1936.

ROBERTSON, CROWE & SPENCE, of Chicago, and RUN-YARD & BEHANNA, of Waukegan, for appellant; BURT A. CROWE, of counsel.

ROBERT L. HUTTNER, of Chicago, and J. E. BAIRSTOW, of Waukegan, for appellees; J. E. BAIRSTOW, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.
This is an action to recover damages for the wrongful death of Stefan Gavurnik, a boy 16 years of age. The original complaint consisted of two counts. At the conclusion of all the evidence, the first count was

withdrawn from the consideration of the jury and the case went to the jury upon the issue made by the second count and the answer thereto, resulting in a verdict in favor of the plaintiffs and against the defendant for $4,000, upon which judgment was rendered, and the record comes to this court for review by appeal.

The second count charged that on August 15, 1934, Stefan Gavurnik, then 16 years of age, was riding a bicycle in a southerly direction on State Highway Route 59 and that appellant was driving his automobile also in a southerly direction along said pavement and overtook Gavurnik and commenced to pass him. This count of the complaint then averred that Gavurnik was in plain view of appellant, that appellant saw him and could have slackened his speed, but he did not do so. This count then charged that appellant, after having so seen Gavurnik, failed to reduce the rate of speed of his car and wilfully, wantonly and maliciously, and with a conscious indifference to consequences, drove his automobile along the highway and struck the said Gavurnik, thereby causing his death, which occurred on August 18, 1934.

The evidence discloses that it rained most of the day of August 15, 1934 and that during the afternoon of that day, Gavurnik and Anton Stepan, another boy 17 years of age, and a senior in high school, started on their bicycles for Wooster Lake from Lake Catherine and that about five o'clock in the afternoon, they were riding along Route 59, going in a southerly direction just south of the entrance to the Chain O'Lakes Country Club; that the pavement was 18 feet in width and was wet and the shoulders along the highway were muddy; that the highway as it passes the entrance to the Chain O'Lakes Country Club is straight and level and so continues for at least 1,600 feet south of the entrance; that it was not raining when the accident happened and there was no other traffic in the road

except the automobile, a Tudor Ford sedan, driven by appellant, which was going in a southerly direction, and the two boys on their bicycles; that it was broad daylight and appellant observed the boys on their bicycles when they were about 300 yards ahead of him, and they were then riding side by side, close to the right or west side of the pavement. Appellant testified that when he was within a distance of 100 or 150 feet from them, he blew his horn but did not observe that either boy turned around and that when he was within about 25 feet from the boys, he started to turn his car to the west and into the other traffic lane in order to pass the bicyclists and that as he did so the deceased suddenly turned his bicycle also to the left, got up on the pedals of his bicycle and cut across the road in front of him; that in an endeavor to avoid hitting the deceased, appellant then turned his car to the right, but his left front fender struck the bicycle upon which Gavurnik was riding, knocking him off and as a result thereof he sustained injuries from which he died. According to appellant's testimony, he was driving at a speed of about 45 miles per hour and did not reduce it or attempt to use his brakes because the pavement was wet. According to the testimony of Anton Stepan, the only other occurrence witness, he, Stepan, looked back for no particular reason and saw appellant's car approaching in the west traffic lane and it was then about 125 feet in the rear of the boys. Stepan thereupon advised the deceased that an automobile was approaching and immediately Gavurnik turned his bicycle to the east and had proceeded to about the middle of the road when appellant's horn was sounded; that Gavurnik continued to the east side of the pavement and Stepan observed him until he was about one foot west of the east edge of the pavement, when he was struck by appellant's car. When the horn sounded, this witness estimated that appellant's car was about 100 feet to

his rear and traveling at the rate of 50 to 60 miles per hour.

From the evidence it is apparent that as soon as Gavurnik became aware of the presence of .appellant's car, he immediately increased his speed and turned his bicycle to the east, and when the accident happened, he had proceeded across the pavement and his front wheel was within a short distance of its east edge and he had advanced three or four feet further south on the pavement than his companion Stepan, who remained on the west side of the pavement. After leaving his companion and starting toward the opposite or east side of the pavement, he, Gavurnik, continued diagonally across the pavement and over into the north-bound traffic lane without altering his course. There was no other traffic on the highway and appellant saw the boys when they were about 300 yards in front of him and at that time he did not give any warning of his approach. About the only difference in the version of the respective witnesses is that Stepan says that the deceased turned to the left and started diagonally across the pavement before the horn on appellant's car sounded and had reached almost the center of the pavement when it did sound, while appellant says that both boys were riding side by side and so continued after he sounded his horn and until he was within about 25 feet of them, when at that time the deceased suddenly turned to the left and crossed his path directly in front of him, and in order to avoid him he, appellant, then turned his car to the right. Appellant says he was about 100 or 150 feet back of the boys when he sounded his horn and Stepan says he was about 100 feet to their rear. Appellant says he was driving all the time at a speed of about 45 miles per hour, while Stepan estimates it at 50 or 60 miles per hour.

In order to sustain the judgment of the trial court, upon the issues made by the pleadings, it was incum-

bent upon appellees to prove by a preponderance of the evidence that the accident was caused by the wilful and wanton misconduct of appellant in operating his automobile. In the recent case of *Farley v. Mitchell*, 282 Ill. App. 555, the court said: "A great deal of language has been used in many cases in the attempt to define with mathematical certainty the difference between ordinary negligence and wilful and wanton negligence. More recent cases have held that this is virtually impossible; that whether an act is wilful and wanton depends upon the particular circumstances of each case. In *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, the court said: 'It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of negligence the law considers equivalent to a wilful or wanton act.' And in *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, it was said: 'What degree of negligence the law considers equivalent to a wilful or wanton act is as hard to define as negligence itself, and in the nature of things is so dependent upon the particular circumstances of each case as not to be susceptible of general statement.' However, the decided cases seem to agree that one of the factors distinguishing a wilful and wanton act is, such absence of care for the person of another as exhibits a conscious indifference to consequences. *Lake Shore & Michigan Southern Ry. Co. v. Bodemer,* 139 Ill. 596; *Walldren Express & Van Co. v. Krug,* 291 Ill. 472; *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392; *Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Streeter v. Humrichouse,* 357 Ill. 234."

In the instant case counsel for appellees insist that inasmuch as the evidence discloses that appellant was traveling between 45 and 60 miles per hour on a wet pavement, that he observed these boys when he was 300 yards in their rear and drove toward them knowing that they were unaware of his approach and that he

continued toward them without slackening his speed and without any warning until he was within 125 feet of them, that he did not attempt to stop his car because he was afraid it would skid, that he continued in the center of the pavement until he was within 125 feet from them and then sounded his horn, which could have only confused them, the only reasonable inference that can be drawn from this evidence is that it exhibits a conscious indifference to consequences and an utter disregard for the safety of others which makes a case of legal wilfulness and wantonness in the operation of his car.

We are unable to agree with this contention. It may be that the deceased became confused when he heard the warning from appellant's horn and it may be that a more skilful driver than appellant could have driven his car in between the bicyclists and not injured either and it may be that a more careful driver would have slackened his speed and sounded a warning sooner than appellant did, but a failure to do these under the circumstances as shown by this record were in our opinion no more than negligent omissions of duty and do not show an indifference to consequences, nor are they equivalent to a wilful and wanton act.

The only traffic in the highway besides appellant's automobile were the bicycles being ridden by the two boys and they were going in the same direction as appellant. Stepan estimates that the car, when he looked around, was about 125 feet in the rear and was about 100 feet in the rear when the horn sounded. As soon as Stepan saw the car, he communicated that fact to the deceased and instantly the deceased turned his bicycle to the east and continued in a south-easterly direction, diagonally across the pavement, without once altering his course. It is a matter of common knowledge that paved State routes are heavily traveled. *Mantonya v. Wilbur Lumber Co.*, 251 Ill. App. 364.

The deceased was an experienced bicyclist and knew that automobiles traveling at a much faster rate than he could travel were likely to be approaching from the rear. The evidence is that until he was so advised by his companion, he was traveling well over to the west side of his own traffic lane, and not more than 1½ feet east of Stepan, who was near the west edge of the pavement. Had he remained there, the accident would not have occurred. He, the deceased, was in no danger had he remained where the law says he should have remained, but he left a place of safety at a time when he knew an automobile was approaching from the rear and would soon pass him, and he deliberately rode diagonally across his own traffic lane, not only to the east side thereof, but had reached about the center of the highway when, according to the evidence most favorable to appellee, the horn of appellant's car was sounded and notwithstanding that warning, he, the deceased, continued in his diagonal course across the east traffic lane and had proceeded so that his front wheel was within a short distance from the east edge of the pavement and his rear wheel extended back several feet northwest into the east traffic lane, and this was the position of the bicycle which he was riding when the left front fender of appellant's car struck it.

In our opinion the trial court erred in not directing a verdict for appellant at the close of all the evidence and for that reason the judgment is reversed.

*Judgment reversed.*