John Heneghan, Minor, By Patrick Heneghan, His Father and Next Friend, Appellant, v. Joseph Goldberg, Appellee.

Gen. No. 39,523.

254

Opinion filed June 29, 1938. Rehearing denied July 12, 1938.

OWENS & OWENS, of Chicago, for appellant.

SIMON HERR, of Chicago, for appellee.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff, John Heneghan, a minor, in a suit brought by Patrick Heneghan, his father and next friend, from an order entered by the court on April 8, 1936, setting aside the judgment on the answer of the jury in the affirmative to the special interrogatory finding the defendant guilty of wanton and wilful misconduct on the occasion in question.

The declaration upon which this action is based, consists of five counts, count two alleging that plaintiff

was injured as a direct and proximate result of the wanton and wilful misconduct of the defendant in the operation of his automobile, the other four counts alleging various acts of negligence by the defendant.

A plea of the general issue was filed by the defendant; also a special plea, which, on motion of the plaintiff, was stricken by the court.

The case was tried in March, 1936, and at the close of plaintiff's case the defendant filed a written motion that the court instruct the jury to find the defendant not guilty under the second count of plaintiff's declaration, which motion was denied. At the close of all the evidence, the defendant filed a like motion, which was denied by the court, and upon direction of the court, the jury retired and in due course returned a verdict finding the defendant guilty and assessing plaintiff's damages at $3,500.

A special interrogatory submitted to the jury asking whether the defendant, Joseph Goldberg, was guilty of wilful and wanton misconduct at the time and place in question, was answered in the affirmative, and on March 12, 1936, the court entered judgment against the defendant for $3,500.

Subsequently, on April 8, 1936, the defendant filed a motion for a new trial, and the court upon due consideration of the motion entered an order that the judgment of March 12, 1936, on the answer of the special interrogatory submitted to the jury on the trial of the case finding the defendant guilty of wanton and wilful misconduct be set aside, and further entered a judgment of not guilty as to the second count of the declaration charging wilful and wanton misconduct of the defendant, and judgment was entered on the several counts charging negligence.

It appears from the evidence that plaintiff, a minor 14 years of age, was selling newspapers at his stand at Lake street and Cicero avenue, a block north of Fulton

street, Chicago. His hours at the stand were from 3 to 9 o'clock in the evening, and just before closing time on September 1, 1933, he was joined by five of his young companions who frequently visited him in the evening. The plaintiff closed his stand after he completed his work and he and the other boys went across to the west side of Cicero avenue and then southward to the northwest corner of Cicero avenue and Fulton street, Chicago, where they stood talking for about 10 minutes. At that point Fulton street going east begins about 150 feet south on Cicero avenue. Fulton street was 80 feet wide from building line to building line, and Cicero avenue was 66 feet wide.

On that evening, the street lamps were lighted; also those of the stores along the street, including a large food mart directly across the street east from where the boys were standing. The intersection was well lighted, arc lights being located along Cicero avenue on each side of the street, one of the lights being on the corner where the boys stood talking. The evening was fair and the streets were dry. The plaintiff and the other boys separated and the plaintiff walked east across Cicero avenue at the north crosswalk of Fulton street. There is evidence that he looked both north and south while crossing the street. When he left the curb he saw an automobile with bright lights about one and one-half blocks south. When he reached the middle of the street he saw that automobile about one-half block away. When he took another step or two he saw the automobile of the defendant about 15 feet away coming directly at him. It had no lights, and the bumper of the automobile struck the plaintiff, a minor, on the side of his right leg and he was thrown against the radiator and then through the air to a place about 30 feet from where he was when struck. The automobile stopped close to where he was lying. From the

facts and the evidence it appears that when the automobile came to a stop its front end was practically even with the south line of what the witness called an alley at the north end of the food mart on the east side of the street. The impact fractured plaintiff's leg so that his leg below the knee was almost at a right angle with his knee; his upper incisor tooth was broken off, his face was cut, requiring stitching, and he sustained bruises and contusions about the entire body. As a result of the injuries, he was confined to the hospital for one month and in bed at home for several weeks, after which he remained in a wheel chair for some time, and then walked with the aid of crutches.

There is evidence in the record of witnesses who testified in court that at the time of the operation of the automobile which collided with the body of the plaintiff the headlights were not burning, and in the operation of the automobile it was running at a rate of speed from 30 to 45 miles per hour at the time of the accident. There is also evidence in the record that no horn was sounded by the defendant in the operation of the automobile just prior to the accident.

There is a controversy as to whether the defendant's automobile lights were burning at the time of the accident; also as to the rate of speed at which the car was going when the accident occurred.

The defendant contends the evidence does not support the finding of the jury that the defendant was guilty of wilful and wanton misconduct, and cites the case of *Bremer v. Lake Erie & Western R. Co.*, 318 Ill. 11, where the court said:

"If there is any evidence in the record fairly tending to show such a gross want of care as indicates a wilful disregard of consequences or a willingness to inflict injury, then it is a question to be determined by the jury whether the negligent conduct of the defend-

ant amounted to wantonness or wilfulness. (*Wall-dren Express Co. v. Krug,* 291 Ill. 472.) What degree of negligence the law considers equivalent to a wilful or wanton act is as hard to define as negligence itself, and in the nature of things is so dependent upon the particular circumstances of each case as not to be susceptible of general statement. The gross negligence which will justify the presumption of wilfulness or wantonness is such as to imply a disregard of conse-quences or a willingness to inflict injury.''

We quite agree with the suggestion of the Supreme Court as to what conduct would necessarily justify the verdict of the jury that the defendant was guilty of wanton and wilful misconduct at the time the alleged accident took place.

As we have already stated, there is evidence that this automobile was being operated by the defendant in the nighttime without lights, and that it was being driven at a speed from 30 to 45 miles an hour upon a public highway in Chicago, where — as the evidence indicates — there were stores or business houses in a built-up territory. The street lamps were burning, and there is no doubt that the street in question was well lighted. The defendant, however, questions the testimony of the witnesses as to the rate of speed defendant was driving. Of course this was a question of fact for the jury, but there is evidence that he was operating his car at a rate of speed which the jury might consider implied a disregard of consequences and at such rate as would justify a presumption of negligent conduct amounting to wantonness and wilfulness. While it is true the questions of fact were controverted in the main, still the jury passed upon these precise questions and decided the issues between the parties. The defendant also questioned the interest of the several witnesses, some of whom were the

minor's companions, and their credibility. In considering the various questions called to our attention, we are of the opinion they were for the jury to pass upon, and if there was any evidence which would tend to prove the allegation of wilful and wanton misconduct it was for them to determine whether the party charged with such conduct was guilty.

The defendant also contends that the verdict of the jury is clearly against the manifest weight of the evidence, but does not point out on what ground he bases his contention. The questions of fact were before the jury, and we believe the verdict returned by them is not against the manifest weight of the evidence.

The third and last contention is that the verdict finding the defendant guilty of wilful and wanton misconduct finds him not guilty of negligence. That depends upon the evidence. As we have previously stated, we believe the jury was justified in finding that the defendant was guilty of wilful and wanton misconduct, which was equivalent to negligence in the operation of his automobile.

The order of the court entered on April 8, 1936, reversing the judgment entered on March 12, 1936, based upon the answer to the special interrogatory submitted to the jury on the trial of the above cause finding the defendant guilty of wilful and wanton misconduct, and the judgment entered on the same date by the court upon the allegation of negligence in the several counts of plaintiff's declaration were erroneous, and are reversed. Therefore, judgment upon the verdict of the jury for $3,500, is entered in this court.

*Reversed and judgment here.*

DENIS E. SULLIVAN and HALL, JJ., concur.