N. D. Connelly, Appellee, v. Charles R. Schutte and John M. Schutte, Trading as Schutte Brothers, Appellants.

Gen. No. 44,066.

Opinion filed April 21, 1948. Rehearing denied May 7, 1948. Released for publication May 7, 1948.

HINSHAW & CULBERTSON, of Chicago, for appellants; OSWELL G. TREADWAY, of Chicago, of counsel.

EUGENE P. KEALY, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

By this appeal defendants seek to reverse a judgment for $5,090.38 entered on the verdict of a jury in an action by plaintiff to recover moneys paid by him to an injured employee under the provisions of the Workmen's Compensation Act.

Plaintiff operates a slag processing plant on the property of the Youngstown Sheet and Tube Company located at 95th street and Lake Michigan in the City of Chicago, Illinois. Hot slag and other refuse drawn from the Youngstown furnace is deposited in large piles or banks where, after a period of cooling, it is loaded by plaintiff's steam shovel into trucks. These trucks transport it to a hopper, over roads prepared by plaintiff, for distances varying from five hundred to two thousand feet. The truck involved in the instant case was one of several owned by defendants and was used in transporting slag from the steam shovel to the hopper. The hopper is about eight feet above the ground level. Covering the hopper is a metal screen or "grizzly bar" about eight feet square

which has openings or meshes of about four by six inches. In order to discharge their loads of slag upon the grizzly bar, trucks are backed up a ramp extending from the ground level to the level of the bar. When the slag is dumped from the trucks onto the bar many of the larger pieces fail to pass through the mesh. These are broken with picks by men stationed at the grizzly bar.

On February 29, 1944, Ernest Meyer driving one of defendants' trucks backed a loaded truck up the ramp to a point a few feet from the hopper, where he brought it to a stop. Meyer got out of the cab of the truck and waited for a period of ten or fifteen minutes while Fred Brokop, one of plaintiff's employees who was stationed at the "grizzly bar," was working large pieces of slag, from a previous load, through the mesh. When the bar was cleared Meyer got into the cab of his truck and proceeded to back up toward the hopper for the purpose of discharging his load of slag on the bar. As he was backing the truck Brokop caught his foot in some part of the bar and he fell over. A rear wheel of defendants' truck ran over Brokop's leg, causing severe injuries.

Under the terms of an oral contract defendants furnished to plaintiff a driver, truck, gas, oil, and all equipment at three dollars an hour. Once each week plaintiff furnished a statement of the number of hours each truck had worked and also paid defendants for the use of the truck during the preceding week.

Defendants' theory is that although they had employed Meyer to drive the truck he was at the time of the occurrence the agent and servant of plaintiff, subject to his direction and control and engaged in the furtherance of plaintiff's business.

At the trial the jury answered affirmatively a special interrogatory submitted by defendants, which read, "Do you find from the evidence that the driver of the truck at the time of the occurrence complained of was

acting as the agent of the defendants?'' The princi-
pal question presented is whether the driver of the
truck at the time of the occurrence was the servant or
agent of plaintiff.

In their brief defendants argue that the facts bring
the present case within that category of cases to which
the law with respect to a loaned or borrowed servant
applies.

Plaintiff says that since the contract was oral the
question whether Meyer, the truck driver, was an agent
of plaintiff or defendant became a mixed question of
law and fact and that defendants are bound by the
special finding of the jury.

The evidence shows that plaintiff testified in his own
behalf substantially as follows: that defendant ''John
Schutte came out to the yard and solicited business
for his trucks; that defendants were to furnish com-
petent drivers and trucks at three dollars an hour, in-
cluding gas, oil, and all equipment; that the trucks
were to be kept in good condition;'' that ''I did not
employ any drivers to drive the trucks owned by
Schutte Brothers; I knew the driver, Ernest Meyer,
who was driving the truck on the day of this accident;
he was not on my payroll.''

The witness further stated that he had no right or
authority to discharge Ernest Meyer the driver of de-
fendants' truck; that at no time did he discharge any
of the drivers sent over to him by defendants; nor
did the witness employ a driver to drive one of the de-
fendants' trucks; that whenever one of defendants'
trucks came to the plaintiff's plant instructions were
given to the driver ''as to where he was to go for his
load and where he was to discharge that load;'' that
the driver of defendants' truck was shown the rail-
road crossings and dangerous places in the road; that
he was shown ''where to go to pick up the material
and where to go to dump it''; and that the witness did
not furnish or pay for any of the gas or oil for defend-

ants' trucks, nor did he pay for any of the repairs or for any insurance, nor did he carry any license on defendants' trucks.

Plaintiff further testified that defendants' trucks worked from 8:00 a.m. to 4:30 p.m.; that he did not know where the trucks were garaged; that the work of the trucks "is routine," traveling to and from the steam shovel, except on occasions the foreman in charge of the plant would have authority to direct the driver, "go out on this road and go to the shore and get a load of screenings and take it away."

Philip C. Connelly, brother of the plaintiff, called on behalf of defendants, testified that there were two of defendants' trucks working at plaintiff's slag plant on the day of the occurrence; that one Matt Biegle, plaintiff's foreman, "determined what time the trucks would start to work and just what work they should do; that truck drivers were cautioned and given instructions at the time the trucks came into the yard; that in order to discharge a truck driver the witness contacted the defendants and that, "I did not have the right to discharge the driver of Schutte's (defendants') if I wanted to."

Ernest Meyer, the truck driver, called by defendants, testified that on the day of the accident he was driving a steel-bodied, ten-ton dump truck equipped with a hydraulic lift; that he was hired and paid by defendants; that he had been driving a truck for defendants about one year before the accident; that before driving a truck for defendants he had worked for plaintiff at his plant as a steam shovel fireman; that he was familiar with the "entire yard. When I came there with my truck to work I didn't have to have any instructions about my duties"; and that "I had certain instructions as to how I was to dump my truck at the grizzly bar."

Defendants' answer denies that the truck in question was operated by their servant, thus raising

an issue of fact. In *Merlo v. Public Service Co.*, 381 Ill. 300, at page 319, the court held: "Wherever evidence must be introduced to maintain an issue of fact made by the pleadings, controverted questions of fact are involved, which include not only evidentiary facts but ultimate facts, even though there is no conflict in the testimony or the evidence may be agreed upon and embodied in a stipulation of facts." (*Navratel v. Curtis Door & Sash Co.*, 290 Ill. 526; *Bolton v. Johnston*, 163 Ill. 234; *Louisville, N. A. & C. R. Co. v. Red*, 154 Ill. 95; *American Exchange Nat. Bank v. Chicago Nat. Bank*, 131 Ill. 547; *Shannon v. Nightingale*, 321 Ill. 168.) In the *Shannon* case last cited it appears that the contract to furnish drivers and trucks for the delivery of gas and oil was not in writing. There was no conflict in the testimony as to the material facts. In that case, as here, at the close of the evidence a motion was made for a directed verdict. The court there held that if the contract had been in writing the question whether the owner of the trucks was an independent contractor would be determined, as a matter of law, by the construction of the written contract, but since the contract was not in writing the determination of its terms was necessarily left to the jury, and that the question of ultimate fact, whether the driver of the truck was an employee of the truck owner or of the firm which had contracted for the use of the truck, involved a conclusion derived from a consideration of evidentiary facts and the application of principles of law, thus making it a mixed question of law and fact. And so in the instant case we think the question whether Meyer, the truck driver at the time of the occurrence, was the agent or servant of plaintiff was clearly, under the foregoing authorities, a mixed question of law and fact and therefore properly submitted to the jury.

Defendants maintain that the verdict of the jury is contrary to the weight of the evidence. They insist that Brokop was injured as a proximate result of his

own negligence. The evidence shows that Brokop and Meyer were the only occurrence witnesses and there is a sharp conflict in their testimony.

Brokop testified that while he was breaking slag with his pick at the grizzly bar he saw Meyer back the truck up the ramp; that Meyer got out· of the truck and wandered amongst some cars "picking some stuff there"; that just before Meyer got on the truck the witness said, "Hold the truck"; that while he was working slag through the grizzly bar he fell over and Meyer "kept on backing up."

Meyer testified that after he got in the truck Brokop said, "Come back Ernie," or something to that effect, whereupon he backed up a distance of seven or eight feet in order to discharge his load upon the grizzly bar; that as he started moving back he looked out "to kind of keep an eye on the man in back" of him; and that when he heard Brokop scream he immediately stopped and "shifted and went forward two or three feet and set the emergency and got out to see what happened."

The evidence shows that Philip Connelly, plaintiff's superintendent, was the first person to reach the scene of the accident; that he asked Brokop how the accident happened, and that Brokop stated that he gave Meyer "the O.K. to back up," and after he gave him "the O.K." he noticed a piece of slag that was directly in front of the rear wheel, and he stepped back to the truck again to remove this lump. When he did that, the truck went over his leg. Brokop denied the alleged admissions related by Philip Connelly.

By section 29 of the Workmen's Compensation Act [Ill. Rev. Stat. 1947, ch. 48, par. 166; Jones Ill. Stats. Ann. 143.44], Brokop's cause of action is transferred to his employer, the plaintiff in the instant case. Defendants argue that the status of Brokop in the case at bar is that of party plaintiff and therefore his admissions are binding upon him. It is undisputed that Brokop was fully compensated for his injuries in

234

accordance with the provisions of the Workmen's Compensation Act and, so far as the record shows, has no financial interest in the present suit. In these circumstances the status of Brokop cannot be regarded as that of a party plaintiff. In any event, the question whether Brokop was guilty of contributory negligence was for the jury to determine and this court will not substitute its judgment for the verdict of the jury unless the evidence is clearly insufficient to support the verdict. (*Philpott v. Parham,* 316 Ill. App. 278.) On the record before us we cannot say that the verdict is manifestly against the weight of the evidence.

Finally defendants complain that the trial court erred in its refusal to give an instruction offered by defendants. We have carefully examined this instruction and those given, and in our opinion the instructions given fully and accurately state the law governing this case.

For the reasons assigned, the judgment is affirmed.

*Judgment affirmed.*

KILEY and BURKE, JJ., concur.