502

DeWitt Pittman, Administrator of Estate of Bobby Pittman, Deceased, Appellant, v. James Duggan, Appellee.

Gen. No. 9,630.

504

Opinion filed February 28, 1949.  Released for publication March 28, 1949.

WAYNE C. TOWNLEY and HOMER ENGLISH, both of Bloomington, for appellant.

CHESTER THOMSON, of Bloomington, and JASPER GULLO, of Springfield, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This case presents an appeal by DeWitt Pittman, administrator of the estate of Bobby Pittman, deceased, plaintiff appellant, hereinafter called plaintiff, from a judgment entered by the circuit court of McLean county, on a jury verdict of "not guilty" in favor of defendant appellee James Duggan, hereinafter called defendant.  The jury also found by special interrogatory that decedent was guilty of contributory negligence.  The errors relied upon by plaintiff Pittman for reversal can best be evaluated in light of the facts appearing in the record.

Plaintiff's decedent, Bobby Lee Pittman, was a child ten years of age who was in the fourth grade of school at the time of the accident complained of.  On the day in question he was struck by defendant Duggan's car on or near a bridge on Route 51 over the Kickapoo, just north of the town of Heyworth in McLean county. Duggan was approaching the bridge from the south and before reaching the point where he struck the child had rounded a curve and had descended a slight incline in the highway.  Duggan's speed was not the subject

of unanimity among the witnesses. Witness Folger, on direct examination, testified to from 55 to 60 miles per hour, but on cross examination reduced his estimates to 40 to 45 miles per hour, and admitted that even that was a rough guess. Folger's companion, witness Kistner, fixed the speed at around 55 miles per hour. Witness Shirley Quast placed the speed of the defendant's car at about 45 miles per hour. It was undisputed that less than one-tenth of a mile from the bridge and governing traffic in the northerly direction in which defendant was proceeding, was a sign reading "End 30 M. P. H. Limit." It likewise appeared that the view of the bridge was obscured by the curve which brought the highway out of Heyworth in the direction of Bloomington, although for possibly a tenth of a mile before reaching the bridge the road was straight. The record establishes that the weather was clear and the pavement dry.

As defendant's car approached the bridge the action of plaintiff's decedent, Bobby Lee, is established by the testimony of three witnesses: witnesses Dale and Shirley Quast and witness Altes. Bobby Lee and a companion were standing on the west side of the bridge, leaning against the abutment thereof. The boys ran in front of cars and threw a burlap bag in front of one car. It is established that the boys were running back and forth across the road. Altes testified that one boy ran from west to east and from east to west, both times just being missed by cars. Almost instantaneously thereafter, as the deceased was in the act of going to the east side of the road he was struck by defendant's car, which was then on the proper side of the center line, and carried some 70 feet down the road. On these facts plaintiff asks us to reverse the judgment of the court below. Plaintiff submits that reversal is warranted by the court's withdrawal from the jury of the wilful and wanton count (count V) in the complaint for insufficient evidence; and by the trial

court's error in refusing certain of plaintiff's instructions. With these contentions this court cannot agree.

██ The court has carefully scrutinized the record of this case together with the exhibits incorporated therein and it concludes that the action of the court below in withdrawing the wilful and wanton count in plaintiff's complaint cannot be called erroneous. It is undoubtedly true, as plaintiff asserts, that whether a personal injury has been inflicted by the wilful or wanton misconduct of another is a question to be determined by the jury if there is any evidence in the record tending to support such allegations. *Streeter v. Humrichouse*, 357 Ill. 234, 191 N. E. 684; *Illinois Cent. R. Co. v. Leiner*, 202 Ill. 624, 67 N. E. 398; *Schachtrup v. Hensel*, 295 Ill. App. 303, 14 N. E. (2d) 897; *City of Lake Forest v. Janowitz*, 295 Ill. App. 289, 14 N. E. (2d) 894. It is also true that the definition of what constitutes wilful and wanton conduct is fraught with grave difficulty and that generalization is almost impossible. Definition has been called as difficult as in the case of negligence itself, and in the nature of things so dependent on the particular facts of each case as not to be susceptible of general statement. *Heneghan v. Goldberg*, 296 Ill. App. 253, 16 N. E. (2d) 139; *Feinberg v. Chicago, B. & Q. R. Co.*, 300 Ill. App. 278, 21 N. E. (2d) 26.

A court, however, may be guided by the circumstances of a particular case and a consideration of the current of authority running through the decisions of this jurisdiction. Analyzed by means of these established paths, it is apparent that here there was no evidence of wanton and wilful conduct considered in the light of the circumstances.

██ From the time when the phrase ''wilful and wanton'' first appeared in the decisions of the courts of this State, *Illinois Cent. R. Co. v. Godfrey*, 71 Ill. 500; see: *Green, Illinois Negligence Law III, Wilful and Wanton Negligence* (1945) 39 Ill. L. Rev. 197, 200,

it has been agreed that wilful or wanton misconduct is such disregard of a known duty necessary to the safety of the person and entire absence of care for life, person or property of others, as exhibits a conscious indifference to the consequences. *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, 148 N. E. 862. But the character of an act as being wilful or wanton is greatly dependent upon the particular circumstances of each case. *Illinois Cent. R. Co. v. Godfrey, supra.* The party doing the act or failing to act must be conscious of his conduct and be conscious from his knowledge or from surrounding circumstances and existing conditions that his conduct will naturally and probably result in injury. *Snedden v. Illinois Cent. R. Co.*, 234 Ill. App. 234; *Gardner v. Kelly*, 308 Ill. App. 6, 31 N. E. (2d) 278.

Turning to the circumstances of this particular case, then, can the conduct of defendant be called wilful and wanton? The court below held it could not and the grounds plaintiff Pittman urges for calling this error, soberly considered, do not justify a different conclusion.

It will be assumed that defendant Duggan was conscious of his conduct. There was no evidence however, that defendant was conscious of his own knowledge that his conduct would naturally and probably result in injury. Defendant did not testify. Can any evidence of constructive wilful and wanton conduct be found in the circumstances in the case? We think not.

▮. It may well be that evidence of speed alone is sufficient to warrant submitting the question to the jury. *Streeter v. Humrichouse, supra.* But a review of the cases indicates that speed is of significance to establish wilful and wanton conduct only if it is speed in such an environment as to indicate an entire disregard for the safety of others. Thus in *Streeter v. Humrichouse, supra*, 30 to 35 miles per hour in the

city of Kankakee on a traveled street leading up to a railroad crossing, with possible parked cars obscuring the defendant's view might well be called evidence of wilful and wanton conduct. But defendant Duggan in the case at bar had just departed from the town of Heyworth. The open road through open country lay in front of him. There was testimony that defendant was exceeding the speed limit while passing through Heyworth. The fact that he was exceeding the speed limit in the town of Heyworth was not evidence of negligence as to the plaintiff's decedent; for the latter's position was perhaps a mile beyond the town. Between the town and the place where the child met his death was a sign reading "End 30 M. P. H. Limit." The day was clear. The road in the immediate vicinity was straight. Defendant's speed before striking the child was fixed by the available testimony at 40 to 50, or 40 to 45, or about 55 miles per hour, and it is established that as he proceeded into the open country away from the recognized perils of the city that his speed did not slacken. In view of the environment—the open country, the straight road, the condition of the pavement, and the other factors, defendant's speed was not evidence of wilful and wanton conduct in this case. As the court said in *Schachtrup v. Hensel, supra,* where in discussing the conduct of a driver in the open countryside:

"It is common knowledge that drivers of cars on a straight paved road with an unobstructed view drive approximately 50 miles per hour and many who drive in excess of that speed are considered careful drivers . . ."

Plaintiff, however, does not rely on evidence of speed alone. Plaintiff argues that there was evidence that the defendant could have avoided hitting the child who is plaintiff's decedent. Plaintiff calls attention to the facts that there was a place to turn to avoid

striking the child (the shoulder of the road), and that defendant could have turned to the right in the direction of the shoulder, as evidenced by the fact that the skidmarks of defendant's car were broken and not continuous, thus imputing to defendant an ability to control his car, even though braking. Again, to establish whether this conduct was or was not evidence of wilful and wanton conduct we must place the conduct in its circumstantial context. *Illinois Cent. R. Co. v. Godfrey, supra.* Bearing this idea in mind, the testimony of Altes becomes of importance in placing defendant's failure to avoid the accident in its true context. Altes recounted that just prior to being struck, one child, he was not certain which, ran from the west side of the road to the east side and then back again. Instead of stopping after either he or his companion had been narrowly missed by the Quast car the deceased child immediately began to run across the road. It was on this last run from the west to east that defendant's car struck the child. Defendant applied his brakes just south of the bridge, but did not turn to the right. Plaintiff argues his failure to do so in view of the ample shoulder there was evidence of wanton and wilful conduct.

The court cannot agree with this contention. The bridge was in the open country. There was no reason to suspect the presence of children playing there. Moreover, the actions of the child were taken so suddenly and so unexpectedly that the court fails to see how a reasonable man could have had the time to plan a safe course of conduct, even though there was a place where the defendant could have turned and possibly have avoided striking the child. There was evidence that defendant's skidmarks were broken. Plaintiff argues that this fact shows that defendant could have turned to the right. But there was no evidence that the breaks occurred *before* the child was struck. The witnesses could not testify as to the

location of the breaks in the skidmarks. That a violent turn to the east shoulder of the road would have avoided the accident is only a possibility, for the testimony shows that plaintiff's decedent was himself running toward the east side of the road when he was struck. The case at bar is to be distinguished from the facts in *Krug v. Walldren Express & Van Co.*, 214 Ill. App. 18, *aff'd* 291 Ill. 472. There an organized baseball game was going on in a city street. The district was heavily populated. Defendant Van Co. struck and injured a base runner. The court noted that the truck proceeded in the same direction that the boy was running and stated "The truck literally chased the boy." The suddenness of the child's action and its entire lack of predictability in view of the defendant's situation at the time also provides a sufficient answer to plaintiff's contention that because it was not shown that defendant gave a warning such was evidence of wilful and wanton conduct.

A brief analysis of the cases upon which plaintiff relies for reversal will indicate that the facts of the case at bar may be distinguished from those plaintiff cites as examples of the presence of some evidence of wilful and wanton conduct. We have already discussed the applicability of *Streeter v. Humrichouse, supra,* as bearing on the question of speed alone as evidence of wanton and wilful conduct. *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392 was another case of conduct in a context of an urban community. But what is evidence of wanton and wilful conduct in a closely built up section is not necessarily such evidence in a rural area. In the *Jeneary* case, *supra,* the accident happened at a combination intersection and railway and interurban car track crossing, at a place where the defendant's car was expected to stop. Wet tracks were established by the evidence. The recently decided case of *Captain v. Saviano,* 335 Ill. App. 125, provides another example of differing

circumstances. There the accident happened at night in a city or a built up portion of an urban area. The defendant was in such a locality traveling from 50 to 60 miles per hour on the *wrong* side of the road and struck a boy without changing direction. The court rightly held that the question of wilful and wanton conduct was for the jury. In *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, the accident happened at the corner of Oak Park avenue and Madison street in Oak Park proper. It was after dark and the pavement was damp. In these circumstances the collision occurred. The evidence was in conflict as to the exact signals of the traffic lights at the intersection. The court there deemed the testimony of the driver of defendant's bus that he saw the plaintiff when each vehicle was 65 feet from the intersection, and that the driver neither applied his brakes nor saw plaintiff again until just prior to the occurrence of the crash when the vehicles were but a few feet apart as meriting the consideration of the jury as evidence of wanton and wilful conduct in such circumstances. *Busch v. Oliphant,* 332 Ill. App. 426 is also distinguishable from the facts of this case. There the defendant collided with a parked vehicle after crossing a busy intersection on a heavily traveled street in the city of Chicago while his attention was distracted by a jammed accelerator, a defective condition of which the defendant knew but the plaintiff, his guest, did not know. Neither the traffic conditions, nor the distractions, see Annotation, 120 A. L. R., 1513, nor the defective condition are comparable to or present in the case at bar. *Mower v. Williams,* 334 Ill. App. 16, is in striking contrast to the facts of the instant case. There it was held error to direct a verdict for the defendant when the defendant collided with the plaintiff at an intersection of State routes which were then covered with ice and snow and extremely slippery. It also appeared that the windows on the defendant's vehicle were fogged

and covered with snow, with only a small peep hole left. The court held that such facts merited submission to the jury on the issue of wilful and wanton conduct.

The case of *Schachtrup v. Hensel, supra,* has already been discussed as bearing on the absence of negligent conduct on the part of one defendant, Tuttle, who was traveling on his own side of the highway in the open country, although at a speed of about 50 miles per hour. The court concluded that such speed was not evidence of negligence as to Tuttle. But as to the other defendant, Potter, the court's holding was contrary. Potter was attempting to pass the car ahead of him without first looking to observe the presence of Tuttle's oncoming car in its proper lane; Potter drove his car head-on into Tuttle's vehicle, and plaintiff, a guest, was injured. Such conduct was held sufficient to sustain the judgment of the court below on a verdict of wanton and wilful conduct on Potter's part. In light of the wide divergency between the facts present in the cases cited by plaintiff and those in the case at bar construed most favorably for plaintiff we cannot hold that those cases warrant reversal of the lower court's withdrawal of the wilful and wanton conduct count from the jury's consideration. We do not think that constructive wanton and wilful conduct can be inferred from the circumstances of this case. Defendant was not conscious from his knowledge of the surrounding circumstances and conditions that his conduct would naturally or probably result in injury.

The second main ground upon which plaintiff relies for reversal is that the court below improperly refused certain requested instructions tendered by plaintiff. Plaintiff rightly points out that with the wilful and wanton count stricken, correct instructions on negligence and contributory negligence become of vital import. Instruction ''refused 1'' in substance embodied the theory that notice by the plaintiff of de-

fendant's approach was not conclusive as to plaintiff's contributory negligence if defendant was traveling at an unlawful rate of speed. It was not error to refuse instruction "refused 1" because the substance of that instruction was presented to the jury in instruction "given 8," which read:

"The court instructs the jury that contributory negligence means a failure on the part of the minor child injured to exercise ordinary care of his own safety considering his age, capacity, intelligence, education, and experience."

It is not error to refuse an instruction when the proposition of law contained therein is substantially covered by the given instructions. *Hubbard v. City of Wood River,* 244 Ill. App. 414; *Alexander v. Brewerton Coal Co.,* 258 Ill. App. 281; *Connelly v. Schutte,* 334 Ill. App. 227. In addition there is no evidence as to notice by the child of defendant's approach, nor evidence from which notice by the child of the defendant's approach could be drawn. The record is bare of such testimony. While the law is well settled that each party is entitled to direct and specific instructions embracing his theory of the facts, the courts note uniformly that this rule applies only where the party's evidence tends to prove such facts. *Thomas v. Chicago Embossing Co.,* 307 Ill. 134; *Koll v. Mitchell,* 330 Ill. App. 132; *Sullivan v. Union Transfer Co. of Omaha,* 330 Ill. App. 133; *Kirchner v. Kuhlman,* 334 Ill. App. 339. Therefore the requested instruction was properly refused. *Chicago Union Traction Co. v. Browdy,* 206 Ill. 615, rev'g 108 Ill. App. 177; *Thirstrop v. Alton & S. R.,* 335 Ill. App. 1.

For lack of evidentiary basis it was also proper to refuse the instruction marked "refused 3." The substance of this instruction is that if the jury believed that plaintiff's intestate saw the defendant's car a safe distance away and started across the high-

way, looked back, saw the defendant, and was struck after zigzagging or going in a circle in an attempt to avoid the collision but was surprised or confused, that the plaintiff's decedent was not guilty of negligence *per se*. There is no testimony showing the child ever looked back. The record is also devoid of any such zigzagging action on the part of the deceased child. True, the answer of defendant, count I, contains such allegations. But such allegations are not under these pleadings evidence or to be taken as true. Witness Shirley Quast saw the deceased child run ''across'' the road; witness Altes corroborated this statement, but is not sure it was the deceased he saw. The hypothetical statement of the instruction was thus entirely unsupported by the facts of the evidence.

While instruction ''refused 6'' more correctly states the facts of the case, in laying stress on the admitted fact that plaintiff's decedent attempted to ''cross'' the highway unmindful of the dangers, the court does not consider its refusal to have been erroneous. It should be pointed out that instruction ''given 7'' not only substantially covers the proposition of law in the refused instruction, but is broader than the refused instruction, more favorable to the plaintiff, and more consonant with the evidence of this case in that it specifically mentions the duty of a driver of a vehicle on a public highway to keep a reasonable lookout to observe persons, ''including children,'' who may be on the highway, not limiting this class to those who *cross* unmindful of danger. It was therefore not erroneous to refuse this instruction. *Connelly v. Schutte, supra.*

Instruction ''refused 4'' is also cited as an example of error by plaintiff. That instruction sought to point out to the jury that plaintiff cannot always prove due care by direct proof, but may resort to facts from which due care may be inferred. Instruction ''given 8'' was submitted to the jury and since it sub-

stantially covered the proposition of law contained in instruction "refused 4" there was no error in refusing the latter instruction. Instruction "given 8" pointed out to the jury that contributory negligence meant a failure on the part of the child injured to exercise ordinary care of his own safety considering his age, capacity, intelligence, education and experience, thus calling for the same inferences which the plaintiff sought to present in the instruction "refused 4." The latter part of this "refused 4" instruction dealing with the reciprocal right and obligations owed by users of the highway, pedestrians or motorists, was also amply covered insofar as protecting the plaintiff is concerned by instruction "given 7," *supra*.

Considering the instructions as a whole, it is the opinion of the court that the jury were fully instructed as to the applicable law, and that there was no reversible error in the giving or refusing of instructions. *Ranson v. Wilson*, 335 Ill. App. 7. There was no other material error in the proceedings below.

For the reasons above stated the judgment of the circuit court is affirmed.

*Affirmed.*