Gerald G. Collister, Plaintiff-Appellant, v. Allen E. Kroblin, Inc., Defendant-Appellee.

Gen. No. 10,336.

Third District.

May 16, 1961.

Chester Thomson and John W. Biggers, of Bloomington, for appellant.

Costigan, Wollrab & Yoder, of Bloomington, for appellee.

CARROLL, PRESIDING JUSTICE.

This is an action for personal injuries and property damage arising out of a collision between plaintiff's automobile and defendant's truck, which was being driven by its employee, Glenn Hamilton. The jury returned a verdict for defendant upon which judgment was entered. Plaintiff's post-trial motion was denied and this appeal followed.

The two grounds relied upon for reversal are that the verdict was clearly and manifestly against the weight of the evidence and that the jury was prejudiced against plaintiff by certain misconduct of defendant's counsel.

The accident occurred near Shirley, Illinois on U. S. Route 66, at approximately midnight of June 4, 1959. Road conditions and the weather were good. At that point Route 66 is a 4 lane highway running north and south with 2 sets of lanes separated by a grass divider, which is 30 to 40 feet wide. Plaintiff testified that on the night of the accident he left Bloomington about 7 P.M. to go to Lincoln, Illinois; that he left Lincoln for Bloomington about 10:30 P.M. proceeding north on Route 66; that he stopped at Atlanta, Illinois for coffee and sandwiches and was there about one-half hour; that he then drove north at about 30 miles per hour; that as he approached the Dixie Truck Stop about 16 miles from Atlanta, he slowed down and was going to stop to get another cup of coffee; that he then

decided to go on and after proceeding approximately 4 miles the accident occurred; that his speed was then 30 to 35 miles per hour; that he was driving in the right hand or north bound lane; that through his rear vision mirror he saw the lights of defendant's truck come up behind him; that at that time both vehicles were in the right traffic lane; that almost as soon as he saw the defendant's truck, it struck the rear of his car, driving him off the road and over an embankment; that he was thrown from the car; that he told the State Police that he did not want to go to the hospital and was taken to his room, and that the following day his neck bothered him and he consulted a doctor who sent him to a hospital.

Glenn Hamilton, the driver of defendant's truck, testified that he had slept during the day of June 4 just south of Springfield; that he was driving north on Route 66 towards Bloomington; that he stopped at the Dixie Truck Stop at McLean, leaving there between 11 and 12 o'clock; that traffic was light; that his speed was about 45 miles per hour; that he was driving a tractor-trailer unit, the tractor having 4 sets of single wheels and the trailer having 4 sets of dual wheels; that he came up behind plaintiff's Pontiac car near Shirley; that at that point the highway was level; that when he noticed plaintiff's car he was about two truck lengths behind it; that its lights were burning; that he pulled into the left lane to pass it; that when he started around the Pontiac it also started to pull into the left lane; that when he struck the Pontiac it was partially in the left hand lane; that his truck was completely in the passing lane and 1½ to 2 feet to the left of the center line of the north bound lane; that prior to the impact he applied his brakes; that he examined the pavement after the accident and saw one tire mark made by the truck's right front wheel, which was 2 feet west of the center line; that these tire marks were where the

truck's right wheels were at the time of the impact; that there was no other tire marks in the passing lane; that there was also water from the truck's radiator in that lane; that the line made by this water was in the center of the passing lane; that after the accident the truck went off the pavement to the left and stopped; that he saw dirt on the pavement on both sides of the black line and dirt extended to the left of the black line all the way to the berm.

Virgil Brooks, a deputy sheriff, testified to seeing skid marks in both the left and right hand lanes; that the skid marks were both double and single; that the farthest the skid marks were to the left of the center line was 2½ to 3 feet.

Gerald Barkley, state trooper, testified that he saw glass and debris in the immediate vicinity of the scene of the accident, and that there were skid marks 23 feet north of the debris.

Ed Beverage, part-time deputy sheriff, on direct examination, testified that he saw double skid marks in the outer lane, 1½ feet to the outside of the 4 lane pavement; that there were two skid marks, one on the left and one on the right of the center line. On cross-examination this witness stated that the dual mark, which was in the outer lane "was the lane closest to the south bound lane of 66."

The foregoing substantially represents the evidence pertaining to the manner in which the accident occurred. Since the jury returned a not guilty verdict, there appears to be no necessity for detailing the evidence pertaining to damages.

As to the plaintiff's contention that the verdict was against the manifest weight of the evidence, it is argued that the factual version of the accident as related by the defendant was not in conflict with that given by plaintiff and that the jury therefore had no choice other than to accept the latter's version. We think the

testimony of the occurrence witnesses conclusively demonstrates that there is no merit in such argument. The driver testified that after he pulled over to the left hand lane and was in the process of passing plaintiff's vehicle, the latter also pulled over into the left lane and the impact occurred between the rear of the car and the front of the truck. Plaintiff's version of the accident was that as he was proceeding along highway 66 defendant's truck came up behind him and when the driver noticed the plaintiff, he applied his brakes and turned to the left but not in time to prevent striking the plaintiff's car. Obviously such version of the accident is contrary to that related by defendant. There is also a conflict in the evidence as to the location of the debris and skid marks. Thus the jury were given a choice between two contrary theories as to how the accident happened.

█ The law in this state is well settled that a reviewing court cannot substitute its judgment for that of a jury in passing upon the weight and credibility of conflicting testimony. DeLegge v. Karlsen, 17 Ill. App. 2d 69, 149 N.E.2d 491.

█ It is also a well established rule that where the evidence is conflicting in order for a verdict to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. Stone v. Guthrie, 14 Ill. App. 2d 137, 144 N.E.2d 165.

█ Likewise a verdict should not be set aside merely because the jury could have drawn different inferences from the evidence. Danhof v. Osborne, 10 Ill. App. 2d 529, 135 N.E.2d 492.

█ In this case the jury saw fit to accept one of two conflicting versions as to how the accident happened, but we cannot say that a conclusion opposite to that reached was clearly apparent. In such situation this Court will not substitute its judgment for that of the jury.

■ It is further contended by plaintiff that the verdict should be set aside and a new trial granted because of prejudicial conduct on the part of defendant's counsel. The complaint as to such conduct on the part of defendant's counsel is based upon certain questions asked of plaintiff on cross-examination in which he had stated that he had sustained a prior injury in an accident in Peoria in the fall of 1958. In his interrogation of plaintiff concerning such prior accident, defendant's counsel asked the following questions:

Q. And that was after the fall you had over in Peoria wasn't it?

A. That is right.

Q. And you filed a law suit over in Peoria as a result of that fall didn't you?

Mr. Thompson: "I am going to object and ask that the jury be instructed to disregard it."

The Court: "Sustained, the jury will disregard it."

Q. And you say that was after that fall in Peoria?

A. Yes.

Q. And that was before this accident, wasn't it?

A. Yes.

Gordon v. Checker Taxi Co., 334 Ill. App. 313, 79 N.E.2d 632, is cited as authority for plaintiff's contention. The same case is relied upon by defendant as sustaining his position that the questions were proper and that the plaintiff's case was not prejudiced by the same. In the Gordon case, on cross-examination of the plaintiff, defendant's counsel asked a series of questions concerning a previous accident and a medical examination by a doctor in a suit for injuries arising therefrom. The witness was asked specifically if such examination was made in connection with a suit then pending in the Circuit Court of Cook County. Plain-

tiff's answer to this and the other questions asked was in the negative. Defendant offered no impeachment proof. On appeal it was held that under the circumstances shown by the record the propounding of these questions concerning whether plaintiff had been treated for prior injuries was reversible error and had this to say: ·

"The questions propounded on cross-examination of plaintiff, except the last one, were proper if asked in good faith for the purpose of impeachment in the event of denial, and had objection been made the court would be obliged to overrule the objection. Proof of the facts involved in such questions would obviously affect plaintiff's present claim for injuries, pain and suffering. Innuendoes involved in such questions are sometimes more damaging than an effort to prove the impeaching facts. When no witness is offered to impeach plaintiff and, therefore, no opportunity for cross-examination presented, the prejudicial effect springing from such questions cannot always be overcome, and results in an unfair trial to a plaintiff. If, under the guise and pretense of laying a foundation for impeachment, a plaintiff could be asked questions that would affect her credibility, such as a supposed former conviction for a felony (ch. 51, § 1, Ill. Rev. Stat. 1947 (Jones Ill. Stats. Ann. 107.067)), where production of the record of conviction is not required, and no proof made or offered, when there is a denial of the fact; or suppose questions were asked concerning alleged conversation with others, which involves very damaging supposed admissions against interest, and though denied by the witness, no proof is offered to impeach, such type of cross-examination, if approved, could succeed in defeating many a meritorious cause."

294

In the instant case an objection to the question was sustained and plaintiff was not required to answer. There being no denial, the necessity for impeachment proof did not exist. The Gordon case condemns only the practice of asking questions which by innuendo could affect a plaintiff's claim and then failing to lay the impeaching facts before the jury. It is not applicable here where there is nothing to indicate that the questions were not asked in good faith. If the record disclosed that plaintiff had denied filing suit in Peoria as the result of prior injuries, and then defendant failed to offer impeaching evidence, there would be some basis for an argument that defendant's counsel was not in good faith laying a foundation for impeachment, but by innuendo was attempting to give the jury an unfavorable impression of plaintiff's claim by injecting matters wholly unrelated to its merits. In the absence of such showing plaintiff's contention that he was deprived of a fair trial by the conduct of defendant's counsel cannot be sustained.

While we do not hold that the question complained of was improper, nevertheless, if such were the fact any claimed error was cured when the court instructed the jury to disregard the same.

We find no reversible error in the record and accordingly the judgment of the Circuit Court is affirmed.

Affirmed.

REYNOLDS and ROETH, JJ., concur.