**Everett CAVINESS, Plaintiff-Appellant,**

v.

**James HAMBLEN, Defendant-Appellee.**

**No. 14185.**

United States Court of Appeals
Seventh Circuit.

Dec. 5, 1963.

Sidney S. Altman, Chicago, Ill., for appellant.

Albert M. Howard, Norton Wasserman, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff Everett Caviness brought this action against defendant James Hamblen seeking to recover damages for personal injuries which resulted when plaintiff was struck by an automobile driven by defendant. Plaintiff charged defendant with simple negligence and wanton and gross negligence in his complaint.

The district court entered an order granting defendant's motion for a directed verdict as to the wanton and gross negligence count. The jury returned a verdict for defendant on the negligence count. Judgment was entered for defendant. Plaintiff's motion for a new trial was denied. From this judgment, plaintiff appealed.

On Friday, September 5, 1958, at approximately 7:30 P.M., plaintiff, a pedestrian, was struck by a car driven by defendant. The weather was clear and dry. It was turning from dusk to dark.

The accident occurred north of where Illinois Route No. 176 crosses over U.S. Route No. 41. At that point U.S. 41 extends north and south and Illinois 176 extends east and west and passes over U.S. 41 by means of a bridge. U.S. 41 dips about 15 feet as it goes under the bridge.

At the scene of the accident U.S. 41 has three northbound lanes and three southbound lanes. Each lane is approximately 12 feet wide. The northbound lanes are separated from the southbound lanes by a center grass parkway.

North of the bridge and on each side of U.S. 41 were two buildings, each containing a combination gas station and restaurant. The gas station and restaurant on the east side were owned and operated by plaintiff's brother and the business on the west side by plaintiff's sister. Plaintiff was at his brother's place of business on the east side of the highway.

A sign adjacent to the highway near the brother's station and restaurant prohibited pedestrians from crossing the highway at that point. The permitted place for pedestrians to cross was a cloverleaf near Illinois 176.

At the time of the accident traffic on U.S. 41 was medium in both directions. It was dark enough that automobiles had their headlights on, yet there was enough light to permit the visibility of the parkway in the center of U.S. 41.

At the trial, the testimony was conflicting as to events leading to the accident.

Defendant testified to the following. Defendant was driving his automobile in a northerly direction on U.S. 41 in the far right hand (easternmost) lane. As he ascended from the bottom of the dip beneath the Illinois 176 bridge, he was traveling between 50 and 55 miles per hour with the headlights on. At the bottom of the dip he could see to the top of the hill but could not see over the crest.

Part way up the hill defendant saw plaintiff, who was just beginning to step out onto the east side of the northbound lanes. Plaintiff appeared to be 300 to 400 feet away and was walking at a medium pace while looking in a southerly direction. Seeing plaintiff on the highway, defendant began decelerating and easing his automobile into the middle northbound lane.

Plaintiff reached the line dividing the easternmost lane from the center lane, stopped and again looked to the south. By that time most of defendant's car was in the center lane and plaintiff was 200 feet away. Noting that plaintiff had stopped, defendant assumed that plaintiff would let him pass, so defendant began turning into the lane nearest the parkway and away from plaintiff. However, instead of remaining at a standstill, plaintiff suddenly started walking west. When well into the center lane and about 100 feet from defendant's vehicle, plaintiff began to run west toward the center parkway. Defendant jammed on his brakes and the right front of his automobile struck plaintiff.

At the time of impact, defendant's speed was between 20 and 30 miles per

hour and plaintiff was still on the highway, at least 6 feet east of the parkway.

The investigating police officer testified that defendant struck plaintiff when plaintiff ran into the path of defendant's automobile. The officer stated that defendant had swerved to the left in an attempt to avoid hitting plaintiff. The officer noted an odor of alcohol from plaintiff's breath and concluded that plaintiff had been drinking.

Plaintiff testified to the following. Plaintiff had never crossed U.S. 41 before. He did not see the sign which prohibited crossing at that point. Plaintiff stepped to the east edge of the highway and stopped to look in a southerly direction. When he saw no traffic coming, he walked across the first (easternmost) lane. About half way across the first lane, plaintiff saw defendant's car which was coming up the hill with its lights on, traveling in the easternmost lane at about 75 miles per hour. Plaintiff estimated defendant's car to be about 500 feet away at that time.

Thinking he had time to "beat" defendant's car, plaintiff continued into the second lane. There he stopped for about one second. At that time defendant's car was about 300 feet away. It had not slowed down but had moved into the center lane. Plaintiff then broke into a run in a westerly direction across the rest of the highway. He was not struck by defendant's vehicle until he had completed crossing the northbound lanes and was standing in the center parkway. Defendant's vehicle was at least 25 feet away when plaintiff reached the parkway.

Plaintiff's niece, who was at the sister's place on the west side of the highway, testified that plaintiff was hit while standing in the center parkway. The niece stated she was unable to see defendant's vehicle until immediately before the accident and did not see the actual impact. She testified she did not recall plaintiff looking in a southerly direction after walking onto the highway. She said plaintiff walked the entire distance across the highway.

After the accident, defendant's automobile came to rest facing in a northwesterly direction. The right rear wheel was in the center parkway and the other three wheels extended into the southbound lanes of U.S. 41.

The impact knocked plaintiff into the outer (westernmost) southbound lane, north of defendant's automobile and about 30 to 40 feet from the point of impact.

At the trial, the following colloquy occurred when defendant's counsel cross-examined the police officer who investigated the accident:

"Q. All right. Was there any information gathered by you with reference to a whiskey bottle?

"A. I heard that an unidentified party—

" * * * [plaintiff's attorney]: I object.

"The Court: No, I think, Mr. Grever, that we are not going to be able to take what somebody else told you.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Did you of your own knowledge know anything about a whiskey bottle, sir?

"A. No.

"The Court: The jury will disregard any reference to the whiskey bottle because that is not appropriate. We have no evidence at this point about a whiskey bottle."

The police officer also testified that he obtained the name of Clint Johnson as a witness to the accident. Johnson had been driving an automobile following defendant at the time of the accident. Johnson was unavailable to testify at the trial and defendant was permitted to make this explanation to the jury.

On appeal, plaintiff contends that the verdict of the jury was contrary to the facts and the law; the district court erred in striking the willful and wanton count; the reference to a whiskey bottle was prejudicial and reversible error; and, the reference to the absent witness led the jury to assume an association be-

tween the whiskey bottle and the absent witness and was prejudicial.

█ Illinois law is that for plaintiff to recover in a negligence action, plaintiff must allege and prove that defendant committed a negligent act, that such act was the proximate cause of the injury and that plaintiff was not contributorily negligent. Blue v. St. Clair Country Club, 7 Ill.2d 359, 131 N.E.2d 31 (1956).

█ We hold that under the evidence in this case the jury could reasonably have concluded that plaintiff failed to prove all three of these elements by a preponderance of the evidence.

In Greene v. Noonan, 372 Ill. 286, 23 N.E.2d 720 (1939), it was held to be reversible error for a trial judge to refuse a motion for directed verdict as to a willful and wanton count when there was no evidence to support such count.

Gavurnik v. Miller, 283 Ill.App. 472, 476 (1936), quotes from Farley v. Mitchell, 282 Ill.App. 555, 558 (1935):

" * * * 'A great deal of language has been used in many cases in the attempt to define with mathematical certainty the difference between ordinary negligence and wilful and wanton negligence. More recent cases have held that this is virtually impossible; that whether an act is wilful and wanton depends upon the particular circumstances of each case. * * * However, the decided cases seem to agree that one of the factors distinguishing a wilful and wanton act is, such absence of care for the person of another as exhibits a conscious indifference to consequences. [cases cited.]' "

The court in Gavurnik held that the trial court abused its discretion in not directing a verdict for defendant on a willful and wanton count. The court stated that perhaps a skillful driver could have avoided deceased and perhaps defendant was negligent in not reducing speed earlier, but defendant did take action to avoid deceased and there was no evidence of willful misconduct.

Pittman v. Duggan, 336 Ill.App. 502 at 508, 84 N.E.2d 701, 703 (1949), defined willful or wanton misconduct as " * * * such disregard of a known duty necessary to the safety of the person and entire absence of care for life, person or property of others, as exhibits a conscious indifference to the consequences. * * * The party doing the act or failing to act must be conscious of his conduct and be conscious from his knowledge or from surrounding circumstances and existing conditions that his conduct will naturally and probably result in injury."

█ We hold that the trial court did not err in striking the willful and wanton negligence count and directing a verdict for defendant thereon.

█ There was no prejudicial error in questioning the investigating police officer about a whiskey bottle. The officer had testified he noted the odor of alcohol from plaintiff's breath. The court properly sustained plaintiff's first objection on the grounds that it was based on hearsay evidence. The court sua sponte struck the answer to the second question because there was no evidence of a whiskey bottle at that point. The jury was properly admonished to disregard such references. We find no bad faith on the part of defense counsel.

Further, it is to be noted that plaintiff did not at the time of such references make any claim of prejudice and did not move for a mistrial. Cases cited and relied on by plaintiff are readily distinguishable on their facts. See, Collister v. Allen E. Kroblin, Inc., 30 Ill.App.2d 288, 174 N.E.2d 911 (1962); 20 Am.Jur., Evidence § 187.

█ We find no prejudice in the explanation by defendant's counsel that the absent witness, Clint Johnson, was unavailable to testify at the trial.

In Petersen v. General Rug & Carpet Cleaners, Inc., 333 Ill.App. 47 at 64–65, 77 N.E.2d 58, 67 (1948), it was held proper for the trial court to instruct the jury that " * * * if * * * defendants * * * had available and subject to their * * * control a witness * * * who saw the accident in ques-

tion * * * then you are instructed that the failure of defendants * * * to call such witness * * * may give rise to a presumption that the testimony of such witness * * * would have been unfavorable to such * * * defendants."

In view of the foregoing presumption, *a fortiori,* an explanation by defendant's counsel concerning the absence of such witness would be proper.

Plaintiff cites Marriage v. Electric Coal Company, 176 Ill.App. 451 (1912). This case is authority for defendant and not plaintiff. The court stated: "Comment on the absence of witnesses related to the parties to the suit, who are shown to have knowledge of the case, was proper but comment concerning the absence of parties not shown to know anything about the case was not permissible and was only made for the purpose of appealing to the prejudice of the jury." Id. 176 Ill.App. at 454. The action was for personal injuries sustained in defendant's coal mine. Plaintiff's brother saw the accident but was not called as a witness by defendant to explain the accident. Plaintiff's counsel commented on the failure to call this witness. Defendant's counsel, in closing argument, commented on plaintiff's failure to call the Hartshorn Brothers. The court held defendant's counsel's action to be grounds for reversal and stated, "Hartshorn Brothers referred to by counsel for * * * [defendant] may have had some interest in the mine as stockholders, but there is nothing in the case showing that they had any personal knowledge of how plaintiff was injured, but plaintiff's brother was with him in the mine at the time he was injured and knew about the circumstances under which he was injured." Id. 174 Ill.App. at 454.

We cannot say that the verdict of the jury in favor of defendant is against the manifest weight of the evidence and substitute our judgment for that of the jury.

Finding no prejudicial error, we hold that the judgment appealed from must be affirmed.

Affirmed.